UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

JENNIFER CLARKE-GREEN,              :
                                    :
                Plaintiff,          :
                                    :        **REPORT AND RECOMMENDATION**
        -against-                   :
                                    :           17 Civ. 778 (EK) (VMS)
THE NEW YORK CITY DEPARTMENT OF     :
EDUCATION, KIMBERLY CHANCE-PEART    :
and MAURICIERE DE GOVIA,            :
                                    :
                Defendants.         :

-------------------------------------------------------- x

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Jennifer Clarke-Green ("Plaintiff") brings this employment-discrimination action against Defendant The New York City Department of Education ("Defendant" or "DOE").[1]  See ECF No. 18.  Plaintiff's remaining claims in this lawsuit are: 1) creation of a hostile work environment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., New York State's Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and New York City's Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107; and 2) discrimination based on age under the NYCHRL based on events occurring after November 15, 2015.  Before the Court is Defendant's motion for summary judgment on Plaintiff's claims.

---

[1] Defendants Kimberly Chance-Peart and Mauriciere De Govia were both dismissed from this action.  See ECF No. 29 at 35; Clarke-Green v. New York City Dep't of Educ., No. 17 Civ. 778 (RRM) (VMS), 2019 WL 13149583, at *16 (E.D.N.Y. Mar. 20, 2019).

See ECF No. 61.[2]  Plaintiff opposed.  See ECF No. 62.[3]  Defendant replied.  See ECF No. 63.[4]

Plaintiff's claims center on her theory that she, and other older teachers in her same protected

class, received disparate treatment with respect to training and discipline and that the

administration at P.S. 327 engaged in a practice of targeting and harassing older teachers in an

effort to force them to resign or retire, or in order to pursue termination against them.  What

follows is an extensive summary of the factual record and supporting evidence, as it is

determinative of this Court's recommendation in this case, see Section I, then the Court's

analysis, see Sections II-III.  For the following reasons, this Court respectfully recommends that

Defendant's motion for summary judgment be granted.

## I.       BACKGROUND

### a.  Procedural History

Plaintiff commenced this action in early 2017, and she filed an amended complaint on

October 12, 2017.  See ECF Nos. 1, 18.  On March 20, 2019, the Court dismissed all but the

following claims from Plaintiff's lawsuit: 1) creation of a hostile work environment in violation

of the ADEA, NYSHRL and NYCHRL; and 2) discrimination based on age under the NYCHRL

based on events occurring after November 15, 2015.  See ECF No. 29 at 35; Clarke-Green, 2019

---

[2] Defendant's opening papers include Notice of Motion, ECF No. 61-2; Defendant's Rule 56.1 Statement ("Def.'s Rule 56.1 Stmt."), ECF No. 61-1; Declaration of Kimberly Chance-Peart ("Chance-Peart Decl."), ECF No. 61-3; Declaration of Defendant's Counsel Karen Rhau, ECF No. 61-4; Defendant's Exhibits A-RR ("Ex. [letter]"), ECF Nos. 61-5 through 61-48; and Defendant's Memorandum in Support ("Memo."), ECF No. 61.

[3] Plaintiff's opposition papers include Plaintiff's Rule 56.1 Counter Statement ("Pl.'s Rule 56.1 Counter Stmt."), ECF No. 62-1; Declaration of Plaintiff's Counsel Thomas Ricotta, ECF No. 62-2; Plaintiff's Exhibits 1-3 ("Ex. [number]"), ECF Nos. 62-3 through 62-5; and Plaintiff's Memorandum in Opposition ("Opp."), ECF No. 62.

[4] Defendant's reply papers consist of a Reply Memorandum ("Reply"), ECF No. 63.

WL 13149583, at *16.  Plaintiff seeks compensatory and punitive damages, injunctive relief and attorneys' fees and costs.  See ECF No. 18 at 13-14.  Defendant moved for summary judgment, which Plaintiff opposed.  See Memo., Opp., Reply.

### b.  The Parties' Rule 56.1 Statements

Rule 56.1(a) of the Local Civil Rules of the Eastern District of New York requires a party moving for summary judgment to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  The non-moving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civ. R. 56.1(b).  The responses by the non-moving party that attempt to "controvert[] any statement of material fact" asserted by the moving party must be supported by a "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Local Civ. R. 56.1(d).  "If the opposing party [] fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."  Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (citation omitted).

Plaintiff admits 85 of Defendant's 103 statements, disputes 15 of the statements, does not have knowledge to admit or deny two of the statements, and does not provide a response to one of the statements, effectively admitting it.  See generally Pl.'s Rule 56.1 Counter Stmt.  Plaintiff does not provide her own separate statement of facts as allowed by Local Civil Rule 56.1(b).  The Court summarizes the following facts using Defendant's Rule 56.1 Statement and Plaintiff's responses thereto, as well as the exhibits and submissions submitted by both parties.  Where an

aspect of Plaintiff's employment was the subject of Plaintiff's § 3020-a proceeding, the employment experience is described in the main text of this Report and the corresponding portion of the § 3020-a proceeding is described in a footnote. Unless otherwise stated, Plaintiff does not dispute the facts included in the summary below.

### i. Background

Plaintiff is a former teacher for the DOE and brings suit pursuant to the ADEA, NYSHRL and the NYCHRL. See ECF No. 18. Plaintiff alleges that Defendant discriminated against her when it issued her ineffective annual performance ratings and terminated her employment pursuant to New York Education Law § 3020-a ("3020-a") in 2017. See Ex. FF.

On May 7, 2018, Defendants served a motion to dismiss the Amended Complaint. See ECF No. 26. On March 20, 2019, the Court issued a Memorandum and Order granting in part and denying in part Defendants' motion to dismiss. See ECF No. 29 at 35; Clarke-Green, 2019 WL 13149583, at *16. In the Memorandum and Order, the Court dismissed the following claims: 1) the ADEA and NYSHRL discrimination claims against the DOE for failure to plead an adverse action/state a claim; 2) the retaliation claims against all Defendants—under the ADEA, 42 U.S.C. § 1983, NYSHRL and NYCHRL—for failure to plead a causal connection and state a claim; 3) the § 1983 claims against the DOE for failure to adequately plead a Monell claim; 4) all claims under the ADEA, § 1983, NYSHRL and NYCHRL against Defendant Kimberly Chance-Peart individually for failure to state a claim and for failure to adequately plead her personal involvement; and 5) all claims against Defendant Mauriciere de Govia for failure to effectuate proper service. See id. The only remaining defendant in this action is Defendant DOE, and the only remaining claims are 1) Plaintiff's hostile-work-environment

4

claims under the ADEA, NYSHRL and NYCHRL[5] and 2) the NYCHRL age-discrimination claim based on events occurring after November 15, 2015.  Id.

Plaintiff alleges that she was a teacher at P.S. 327, a New York City public school operated by the DOE.  See ECF No. 18 ¶ 12.  Plaintiff alleges that in 2014, when Ms. Chance-Peart became the Principal of P.S. 327, Principal Chance-Peart was issued a "mandate" by Superintendent de Govia "to get rid of older teachers."  See id. ¶¶ 15-19.  Plaintiff alleges that (i) ten other older teachers were subjected to adverse actions; (ii) upon Principal Chance-Peart's arrival at P.S. 327, Plaintiff was unjustly issued ineffective performance evaluations; (iii) Plaintiff was unfairly issued a Teacher Improvement Plan ("TIP"); (iv) administrators at P.S. 327 solicited and fabricated false allegations against Plaintiff; and (v) younger teachers were not subjected to the same or similar adverse treatment as was Plaintiff.  See id. ¶¶ 17-30.

### ii.  P.S. 327, The Dr. Rose B. English School

Plaintiff was born in 1966.  See id. ¶ 9.  Plaintiff began working for the DOE as a teacher in 2001.  See Ex. PP.  Plaintiff began working at P.S. 327, the Dr. Rose B. English School, in or around August 2007.  See Ex. 1 at 41:21-24; see also Ex. PP.  P.S. 327 services elementary and middle school students from kindergarten through the eighth grade.  See Ex. 1 at 42:6-7.  At P.S. 327, Plaintiff taught English Language Arts ("ELA") and initially taught the sixth grade.  Id. at 41:25-42:3.  Plaintiff recalls that while she was employed at P.S. 327, Ms. de Govia became the

---

[5] The Court previously found that these hostile-work-environment claims survive because Plaintiff bases these claims, in part, on the initiation of her § 3020-a proceeding, which occurred within the various statute-of-limitations periods applicable to the ADEA, NYSHRL and NYCHRL.  Given the continuing nature of hostile-work-environment claims, the Court may consider activity that occurred outside the statute-of-limitations periods.  See ECF No. 29 at 9-10, 12; Clarke-Green, 2019 WL 13149583, at *4-5.  The Court therefore includes in its factual summary Plaintiff's disciplinary events and performance ratings from before November 15, 2015.

Superintendent for her District at or around the 2013-2014 school year.  Id. at 45:25-46:3.

During the beginning of the 2014-2015 school year, Ms. Chance-Peart became the Principal of

P.S. 327.  See id. at 59:19-22; Chance-Peart Decl. ¶ 6.  At the time she submitted her declaration

on this motion, Principal Chance-Peart was 44 years old.  See Chance-Peart Decl. ¶ 2.

Plaintiff contends that Superintendent de Govia issued a "mandate" to Principal Chance-

Peart to "get rid of older teachers."  See ECF No. 18 ¶ 19; Ex. 1 at 76:17-22.  Defendant

responds that Superintendent de Govia did not, at any time while Ms. Chance-Peart served as

Principal of P.S. 237, issue a mandate, order, request, directive or command to terminate or "get

rid of" older teachers.  See Chance-Peart Decl. ¶ 11.  Plaintiff counters Defendant's contention,

stating it was "widely known to have occurred by the staff within the school."  See Pl.'s Rule

56.1 Counter Stmt. ¶ 14 (citing Ex. 1 at 78-79).  The only evidence Plaintiff offers to support her

allegation is her deposition testimony that she heard other teachers stating that Principal Chance-

Peart received a mandate to get rid of older teachers and that Plaintiff believed this was true

based on the way Principal Chance-Peart acted.  See Ex. 1 at 78:17-80:3.  At no time during

Plaintiff's tenure as a teacher at P.S. 327 did Superintendent de Govia conduct any independent

observations, issue observation reports, or prepare performance evaluations of Plaintiff.  See id.

at 58:4-12.

At the time that Ms. Chance-Peart became Principal of P.S. 327, the school was rated as

an underperforming school; the students' average scores on state-wide exams were at an

extremely low pass rate.  See Chance-Peart Decl. ¶ 6.  Most of the school's subject-area passing

rates were in the single digits.  See id.  For example, that year, none of the eighth graders passed

the eighth-grade state-wide math examination.  See id.  Principal Chance-Peart inherited other

operational and systemic challenges at P.S. 327.  See id.  For example, the school did not have a

library for students because the existing library was being used as a storage unit; the school

lacked a teacher space for professional development activities; the school failed to implement the

already existing common-core curriculum; many students themselves had parenting

responsibilities; and many students were participants in family court and criminal court matters.

See id.

At the time that Ms. Chance-Peart became Principal of P.S. 327, Randi Gold and

Genevieve Mohamad were Assistant Principals of P.S. 327.  See id. ¶ 9.  By the date of Principal

Chance-Peart's declaration, Assistant Principal Gold was approximately 40 years old and

Assistant Principal Mohamad was approximately 50 years old.  Id.  Principal Chance-Peart,

along with ten other individuals, formed a hiring committee for P.S. 327.  See id.  The hiring

committee members were Principal Chance-Peart, Assistant Principal Gold, Assistant Principal

Mohamad, parents of students, staff members and professional development coaches.  Id.  The

P.S. 327 hiring process had three stages: the first stage consisted of group interviews between

candidates and the hiring committee; in the second stage, qualified applicants were asked to

perform lessons or practices before members of the hiring committee; and in the third stage,

applicants interviewed with Principal Chance-Peart and Assistant Principals Gold and Mohamad.

Id.

### iii.  2014-2015 Performance-Related Concerns About Plaintiff

Defendant contends that, during the first interaction between Plaintiff and Principal

Chance-Peart, which was on Ms. Chance-Peart's first day as Principal at P.S. 327, Plaintiff

approached Principal Chance-Peart and informed Principal Chance-Peart that she could not teach

her assigned subject of ELA because she was a reading teacher.  Id. ¶ 16.  Defendant contends

that Principal Chance-Peart informed Plaintiff that ELA incorporates reading, writing and

comprehension, and that teaching ELA would not be outside of her content-specialty area.  Id.

Defendant contends that Plaintiff informed Principal Chance-Peart that if her assignment was not

changed, she would not report to work on the first day of school.  Id.  Plaintiff disputes these

contentions, and adds that, for the 2014-2015 school year, Plaintiff was initially assigned to teach

ELA in the sixth grade, but that she was moved in October or November to teach the fourth

grade.  See Pl.'s Rule 56.1 Counter Stmt. ¶¶ 21-22 (citing Ex. 1 at 58-59).

    The Court notes the unchallenged record shows that Plaintiff had a common-branch

license that allowed her to teach pre-kindergarten through sixth grade.[6]  See Ex. 1 at 13:19-25,

22:6-10; Ex. EE at DOE000886.

    On the first day of the 2014-2015 school year, Plaintiff failed to report to work.  See

Chance-Peart Decl. ¶ 17.  Plaintiff was not disciplined for her failure to report to work.  See id.

## 1.    Observations And Evaluations

    During the 2014-2015 school year, Plaintiff received numerous ineffective performance

ratings based on several teaching observations.  See Exs. B-C.

    Under the DOE's standard processes, an informal observation is an observation of a

teacher's performance that is conducted for a minimum of 15 minutes.  See Ex. B.  On December

2, 2014, Plaintiff was informally observed by Assistant Principal Gold.  Id.  After this December

observation, Plaintiff's Annual Professional Performance Review ("APPR") reflected ineffective

scores in the following areas: 1) demonstrating knowledge of content and pedagogy; 2)

designing coherent instruction; 3) creating an environment of respect and rapport; 4) managing

---

[6] The determination and findings issued after Plaintiff's § 3020-a proceeding state Plaintiff's
"teaching assignment from sixth to fourth grade [] does not substantiate any bias or animus by
Chance-Peart or lend support to [Plaintiff's] claim of a witch hunt" because "[b]y the terms of
[Plaintiff's] common branch license, teaching fourth grade was a valid assignment for her and
well within the scope of her professional ability."  See Ex. EE at DOE000886.

student behavior; 5) using questioning and discussion techniques; 6) engaging students in learning; and 7) using assessment in instruction.  Id.  Plaintiff does not dispute this APPR, to the extent that her APPR reflected these scores.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 28.  Plaintiff did not sign the evaluation form, which has a notation on it that a "[r]efuting letter will be forthcoming."  See Ex. B at DOE000066.  It appears that Plaintiff sent Assistant Principal Gold at least one email in response to Plaintiff's December 2, 2014 evaluation.  See Ex. EE at DOE000887-88.  Plaintiff has failed to include this correspondence in the record.[7]

On June 2, 2015, Pauline Smith-Gayle conducted another informal observation of Plaintiff's classroom.  See Ex. C.  Ms. Smith-Gayle is a F-status Principal/administrator employed by the DOE.  See Ex. QQ ¶ 1.  An F-status principal is a retired principal who is paid on a per diem basis to work as an administrator one or two times a week.  Id. ¶ 8.  After the observation, Plaintiff's APPR reflected ineffective scores in the following areas: 1) creating an environment of respect and rapport; 2) managing student behavior; and 3) using questioning and discussion techniques.  See Ex. C.  Plaintiff did not sign the evaluation form.  See id. at DOE000076.  Plaintiff does not dispute this APPR, to the extent that her APPR reflected these scores and school-year rating.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 38.  Plaintiff has not provided any evidence to dispute the substance of her evaluation.[8]  Plaintiff also does not allege she was

---

[7] The email was in the record before the hearing officer in Plaintiff's § 3020-a proceeding; the hearing officer found "these responses prove to be inadequate to raise a genuine and material dispute regarding the accuracy of Gold's observation findings."  See Ex. EE at DOE000887-88.

[8] The Court notes that Plaintiff testified in her § 3020-a proceeding about this observation, which the hearing officer described as Plaintiff stating the report was "'untruthful,' and then [Plaintiff] offered only very general and uncorroborated assertions, such as denying that the students were unengaged and called out, and claiming that student sharing and peer-to-peer assessment took place."  See id. at DOE000888.  The § 3020-a hearing officer concluded Plaintiff's "defense was [] too lacking in specificity to present a genuine factual dispute."  See id.

discriminated against based on her age by Ms. Smith-Gayle.  See Ex. 1 at 148:14-17.

Plaintiff's overall APPR rating for the 2014-2015 school year was "ineffective."  See Ex. H; Ex. 1 at 59:13-18.  Plaintiff does not dispute this, to the extent that her APPR reflected this overall school-year rating.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 39.  Plaintiff testified she filed a union grievance regarding her overall ineffective rating for 2014-2015 school year and that her ineffective rating was substantiated by Deputy Chancellor Philip Weinberg.  See Ex. 1 at 76:5-12; Ex. EE at DOE000845 ("[Plaintiff's] appeal of that rating, she stated, was denied by a decision of Deputy Chancellor Philip Weinberg, acting as the Chancellor's designee.").[9]

### 2.   Letters To File

On January 6, 2015, Assistant Principal Gold issued a letter to Plaintiff's file finding that Plaintiff violated Chancellor's Regulation A-420 when an allegation that Plaintiff hit a student in the arm with a book was substantiated by Assistant Principal Gold's investigation.  See Ex. L.  A student alleged that on November 26, 2014, Plaintiff hit the student with a book on the student's arm and said "mind your own business and you never do any work."  Id.  Plaintiff does not dispute that such a letter was issued and that a student made this allegation, but she disputes the truth of the allegation, claiming it is part of Defendant's pattern of creating false allegations about Plaintiff and other teachers.  See Pl.'s Rule 56.1 Counter Stmt. ¶¶ 29-30 (citing Ex. 1 at 79-80).  On December 16, 2014, Assistant Principal Gold met with Plaintiff and her union representative regarding the student's allegation.  See Ex. L.  During the meeting, Plaintiff stated "[i]t seems like a conspiracy."  See id.  When Plaintiff was asked whether she ever held a book

---

[9] Plaintiff argued in her § 3020-a proceeding that her annual ineffective rating should be deemed invalid based on her claim that "the School's administration had engaged in a 'witch hunt' to discharge her."  See Ex. EE at DOE000884.  The § 3020-a hearing officer rejected Plaintiff's challenge to the "ineffective" rating.  See id. at DOE000884-85.

in her hand and hit the student playing around, Plaintiff replied "I don't recall." See id. Six out of eight witnesses corroborated the student's allegation that Plaintiff hit the student in the arm with a book. Id. As noted in Plaintiff's § 3020-a proceeding, the other two students "stated they were unaware of anything that occurred between [Plaintiff] and [the student]."[10] See Ex. EE at DOE000856.

On January 14, 2015, Assistant Principal Gold issued a letter to Plaintiff informing her that she failed to perform her duties to enter certain chapters into Dropbox as required. See Ex. M. Assistant Principal Gold stated that she provided Plaintiff "several reminders" and gave Plaintiff "time during professional development sessions on Mondays and Tuesdays to enter the data." See id. Plaintiff does not dispute this, to the extent such a letter was issued. See Pl.'s Rule 56.1 Counter Stmt. ¶ 34. Plaintiff does not provide evidence to dispute the substance of the letter.

### iv. 2015-2016 Performance-Related Concerns About Plaintiff

As a result of Plaintiff's ineffective performance ratings for the 2014-2015 school year, Plaintiff was placed on a TIP for the 2015-2016 school year. See Ex. J. Under DOE procedures, a TIP is issued to teachers to outline the steps that the subject teacher needs to take in order to improve his or her practice and to provide guidance to help the teacher to achieve the TIP's goals. See Chance-Peart Decl. ¶ 21. The DOE issues a TIP to teachers as a result of observations and reviews from prior school years. Id. Plaintiff's TIP for the 2015-2016 school

---

[10] The hearing officer in Plaintiff's § 3020-a proceeding found DOE's evidence insufficient to substantiate this charge because the DOE failed to present any first-hand account or direct evidence regarding the alleged misconduct; the evidence presented, Assistant Principal Gold's testimony and the student statements she secured as part of her investigation, were found to be inadmissible hearsay. See Ex. EE at DOE000892. Plaintiff was found not guilty of this charge in her § 3020-a proceeding. See id.

year indicated Plaintiff's areas for improvement; action steps and activities needed to improve her practice; a timeline for completion; resources available to support Plaintiff; examples of effective practices; and a statement as to how Plaintiff's performance would be assessed under the TIP.  See Ex. J.  Plaintiff does not dispute this, to the extent that her 2015-2016 school year TIP so stated.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 43.  Plaintiff does not provide evidence in the record to dispute the substance of the TIP.[11]

### 1.   Observations And Evaluations

On October 26, 2015, Plaintiff's performance was observed and evaluated by Frederick King, an F-status principal.  See Ex. D.  After the observation, and despite Plaintiff having been issued a TIP, Plaintiff's APPR reflected ineffective scores in the following areas: 1) demonstrating knowledge of content and pedagogy; 2) creating an environment of respect and rapport; 3) managing student behavior; and 4) using assessment in instruction.  Id.  Mr. King noted in the evaluation that Plaintiff should "refer back to [her] TIP," employ the strategies offered and follow the examples provided therein.  See id.  Plaintiff does not dispute this, to the extent that her APPR reflected these scores and comments.  See Pl.'s Rule 56.1 Counter Stmt. ¶¶ 45-46.  Plaintiff signed the evaluation, noting there would be a "[r]ebuttal to follow," but the record before the Court does not contain a rebuttal document.  See Ex. D at DOE000094.  Plaintiff also does not allege she was discriminated against based on her age by Mr. King.[12]  See

---

[11] The hearing officer at Plaintiff's § 3020-a proceeding found that this TIP was "both developed and substantially implemented" for Plaintiff.  See Ex. J; Ex. EE at DOE000882.

[12] In Plaintiff's § 3020-a proceeding, the hearing officer noted that Plaintiff neither produced the alleged rebuttal document nor recounted its contents.  See Ex. EE at DOE000889.  The hearing officer in Plaintiff's § 3020-a proceeding found the charge that Plaintiff failed to properly, adequately and/or effectively plan and/or execute lessons based on Mr. King's observation on October 26, 2015 to be substantiated.  See id. at DOE000890-91.

Ex. 1 at 148:14-17.

On February 22, 2016, Plaintiff's performance was observed and evaluated by Principal Chance-Peart.  See Ex. E.  After the observation, Plaintiff's APPR reflected ineffective scores in all categories: 1) demonstrating knowledge of content and pedagogy; 2) designing coherent instruction; 3) creating an environment of respect and rapport; 4) managing student behavior; 5) using questioning and discussion techniques; 6) engaging students in learning; 7) using assessment in instruction; and 8) growing and developing professionally.  Id.  The APPR noted that during the observation, 1) Plaintiff did not have a lesson plan; 2) there was no objective posted (the boards were empty); 3) a student was on a phone; 4) students were walking around the room; 5) one student took a tree branch off of Plaintiff's desk, that Plaintiff had already taken away from another student, and began hitting the desks with the branch; 6) only five students had books; 7) students were throwing a ball around the class; and 8) Plaintiff overall failed to provide instruction to students.  See id.  Moreover, during this observation, Plaintiff had been tasked with teaching science, but she failed to provide any science lessons to the students.  See id.  Plaintiff does not dispute this, to the extent that her APPR reflected these scores and comments.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 67.  Plaintiff signed the evaluation writing "Rebuttal to follow," "Inaccurate information" and "Harrassment [sic]."  See Ex. E at DOE000099.  Plaintiff does not provide evidence in the record to dispute the substance of her evaluation.[13]

---

[13] In Plaintiff's § 3020-a proceeding, the hearing officer reported that Plaintiff "claimed to have submitted [a] written rebuttal[] to [Principal] Chance-Peart, but neglected to retain copies.  She made no attempt to recount the substance of those rebuttals; nor did she offer any explanation for her failure to do so."  See Ex. EE at DOE000889.  The hearing officer also noted that, at his direction, a search of DOE's records failed to yield copies of the reported rebuttals.  See id.  The hearing officer in Plaintiff's § 3020-a proceeding found the charge that Plaintiff failed to properly, adequately and/or effectively plan and/or execute lessons based on Principal Chance-Peart's observation on February 22, 2016 to be substantiated.  See id. at DOE000890-91.

On March 2, 2016, Principal Chance-Peart conducted a formal observation of Plaintiff, which is an observation for a full class period. See Ex. F. After the observation, Plaintiff's APPR reflected ineffective scores in all categories. During this evaluation, Principal Chance-Peart found that among other things, Plaintiff's bulletin boards were not up to date; Plaintiff failed to enter her "GO Math" assessments in Dropbox as required; and Plaintiff failed to submit her Friday Folders as required. See id. Plaintiff does not dispute this, to the extent that her APPR reflected these scores and comments. See Pl.'s Rule 56.1 Counter Stmt. ¶ 69. Plaintiff signed the evaluation writing "Inaccurate information." See Ex. F at DOE000105. As with the previous evaluation, Plaintiff has not provided evidence in the record to dispute the substance of her evaluation.[14]

On March 7, 2016, Assistant Principal Mohamad conducted an informal observation of Plaintiff. See Ex. G. After the observation, Plaintiff's APPR reflected ineffective scores in all applicable categories. Id. During this evaluation, Assistant Principal Mohamad found that Plaintiff's lesson consisted of reading text to the students. Id. As a result, Assistant Principal Mohamad provided Plaintiff with resources beyond the textbook to assist Plaintiff with her teaching practice. Id. Plaintiff does not dispute this, to the extent that her APPR reflected these scores. See Pl.'s Rule 56.1 Counter Stmt. ¶ 70. Plaintiff signed the evaluation writing "Inaccurate information." See Ex. G at DOE000109. As with the previous evaluations, Plaintiff

---

[14] In Plaintiff's § 3020-a proceeding, Plaintiff claimed to have submitted a written rebuttal to Principal Chance-Peart, but she failed to retain a copy of it, and a search of the DOE's records failed to yield a copy. See Ex. EE at DOE000889. The hearing officer in Plaintiff's § 3020-a proceeding found the charge that Plaintiff failed to properly, adequately and/or effectively plan and/or execute lessons based on Principal Chance-Peart's observation on March 2, 2016 to be substantiated. See id. at DOE000890-91.

does not provide evidence to dispute the substance of her evaluation.[15]

As an additional response to Plaintiff's overall ineffective rating for 2014-2015, Plaintiff's 2015-2016 APPR states that she was "assigned a Peer Validator during school year 2015-16" and that she would receive "three unannounced, full-period classroom observations" which would be averaged to compute Plaintiff's "Peer Validator MOTP Points," which would be factored in to determine Plaintiff's overall rating. See Ex. I at DOE000113. According to Plaintiff's § 3020-a findings, Justin Connors, a tenured elementary school teacher with 12 years of service with the DOE, observed Plaintiff for these three evaluations on February 24, 2016, March 29, 2016, and May 9, 2016. See id.; Ex. EE at DOE000854. Plaintiff does not allege she was discriminated against based on her age by Mr. Connors. See Ex. 1 at 148:14-17. Mr. Connors scored Plaintiff as "less than effective" on all criteria at each observation. See Ex. EE at DOE000854; Ex. I at DOE000113.

Plaintiff's overall APPR rating for the 2015-2016 school year was found to be ineffective. See Ex. I. Plaintiff does not dispute that her overall APPR rating for the 2015-2016 school year was ineffective.[16] See Pl.'s Rule 56.1 Counter Stmt. ¶ 72.

---

[15] In Plaintiff's § 3020-a proceeding, Plaintiff disputed the content of the evaluation. See Ex. EE at DOE000889. The hearing officer found that Plaintiff's "testimony [in those proceedings] regarding [Assistant Principal] Mohamad's March 7, 2016 observation consists of circular reasoning and general denials;" the hearing officer found that Plaintiff had not "demonstrate[d] that a genuine and material dispute exists concerning her competency." See id. at DOE000889-90. The hearing officer found the charge that Plaintiff failed to properly, adequately and/or effectively plan and/or execute lessons based on Assistant Principal Mohamad's March 7, 2016 observation to be substantiated. See id. at DOE000890-91.

[16] Plaintiff argued in her § 3020-a proceeding that her annual ineffective rating should be deemed invalid based on her claim that "the School's administration had engaged in a 'witch hunt' to discharge her." See Ex. EE at DOE000884. The hearing officer rejected Plaintiff's challenge to the annual rating. See id.

## 2.   Letters To File

On November 20, 2015, Plaintiff was issued a letter to her file by Assistant Principal Gold indicating that Plaintiff had failed to perform her assigned duties during a walkthrough of her classroom, and that Plaintiff's guided reading books had not been changed.  See Ex. N. Plaintiff does not dispute this, to the extent such a letter was issued.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 47.  Plaintiff does not provide evidence to dispute the substance of the letter.[17]

On December 16, 2015, Plaintiff was issued a letter to her file by Assistant Principal Gold indicating that Plaintiff failed to submit her Friday Folder as required on December 11, 2015.  See Ex. O.  Plaintiff does not dispute this, to the extent such a letter was issued.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 48.  Plaintiff does not provide evidence to dispute the substance of the letter.  In fact, Plaintiff admits she did not submit her required Friday Folders three times.[18]  See Ex. 1 at 120:12-19.

On January 22, 2016, Plaintiff was issued a letter to her file by Principal Chance-Peart. See Ex. P.  Principal Chance-Peart's letter indicated that on October 29, 2015, Plaintiff had been insubordinate and had exhibited professional misconduct for failure to properly transition students through the hallways.  See id.  Plaintiff does not dispute this, to the extent such a letter was issued.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 49.  Plaintiff does not provide evidence to

---

[17] In Plaintiff's § 3020-a proceeding, the hearing officer found this charge to be substantiated because "[Plaintiff] did not dispute this failure.  Nor did she offer any excuse for it or identify any mitigating circumstances."  See Ex. EE at DOE000896.

[18] In Plaintiff's § 3020-a proceeding, the hearing officer found this charge to be substantiated because Plaintiff "did not dispute" this failure, and Assistant Principal Gold's testimony "clearly established" the "relevant facts."  See Ex. EE at DOE000896-97.

dispute the substance of the letter.[19]

Plaintiff testified that the notes written at the end of the January 22, 2016 letter stating that she refused to sign the letter were inaccurate. See Ex. P at DOE000137; Ex. 1 at 125:11-126:6. Plaintiff testified she had an interaction with Ms. McCoy, an employee in P.S. 327's main office, on a Friday, stating she would come back to sign the letter on Monday. See Ex. 1 at 125:11-126:6. When Plaintiff returned to the main office at school on Monday to sign the letter, Ms. McCoy had written that Plaintiff refused to the sign the letter on Friday. See Ex. P at DOE000137; Ex. 1 at 125:11-126:6.

On January 26, 2016, Plaintiff was issued a letter to her file by Assistant Principal Gold. See Ex. Q. Assistant Principal Gold indicated in her letter that Plaintiff had neglected her duties and exhibited professional misconduct on January 22, 2016. See id. Plaintiff does not dispute this, to the extent such a letter was issued. See Pl.'s Rule 56.1 Counter Stmt. ¶ 50. Plaintiff wrote near her signature at the end of the letter: "Attached is a response and snap shot of grades and date entered." See Ex. Q at DOE000134. The purported response and snap shot of grades has not been presented by Plaintiff to the Court, and Plaintiff does not provide evidence to dispute the substance of the letter.

---

[19] The hearing officer noted that, in Plaintiff's § 3020-a proceeding, the only response Plaintiff had to her conduct on October 29, 2015, was that "she was not receiving professional development." See Ex. EE at DOE000858. Although Plaintiff claimed that the reason she did not respond to Principal Chance-Peart's directive on October 29, 2015 to comply with the procedure for lining up students was because her yelling at Plaintiff caused Plaintiff to freeze, the hearing officer in Plaintiff's § 3020-a proceeding found that the record was devoid of any supporting evidence, and that Plaintiff should have complied with Principal Chance-Peart's directive in the moment, regardless of how it was delivered, and could have grieved it later. See id. at DOE000857-58, -94-95. This charge that Plaintiff neglected her duties, failed to follow school policy and procedure, and/or used poor judgment in that on October 29, 2015, she failed to effectively manage her students as they transitioned through the hallways was found to be substantiated in Plaintiff's § 3020-a proceeding. See id. at DOE000895.

On January 26, 2016, Plaintiff was issued an additional letter concerning an incident that occurred on January 25, 2016.  See Ex. R.  Principal Chance-Peart's letter indicates that Plaintiff shouted to Assistant Principal Gold, "[i]n the name of Jesus, I rebuke you," and "Jesus is going to beat you.  I rebuke you in the name of Jesus, I bind you up in the name of Jesus.  Jesus will punish you."  Id.  Principal Chance-Peart found Plaintiff's actions constituted insubordination and conduct unbecoming a professional.  Id.  Plaintiff does not dispute this, to the extent such a letter was issued, but she disputes the contents of the letter as fabricated.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 51 (citing Ex. 1 at 79-80).  Plaintiff cites to her deposition testimony stating she believes younger teachers were "given the professional development that they need," that younger teachers were the ones who "get the effective ratings," that older teachers were "screamed at in the building," and that "[s]ometimes these new teachers, we see so many things happening that they were not written up for it."  See Ex. 1 at 78:24-80:3.  Plaintiff also testified in her deposition that she said to Assistant Principal Gold "I am a child of God and God – when you come against me, you come against God and that is serious[.]"  See id. at 126:17-19.  Plaintiff signed the letter regarding this incident, noting "Response to follow."  See Ex. R at DOE000130.  Plaintiff does not provide evidence of any such response or rebuttal, but an undated letter from Plaintiff recounting her version of the events is provided in the materials that were sent to the Office of Special Investigations ("OSI") for the DOE, as discussed below.  See Ex. BB at DOE000298-99.  After investigating the January 25, 2016 incident, Principal Chance-Peart found the allegation was substantiated.  See id. at DOE000294.

Principal Chance-Peart reported the January 25, 2016 incident to the OSI, stating it was out of her concern for Plaintiff's mental stability and the safety of staff, and an OSI investigation was commenced.  See Ex. BB.  Plaintiff does not dispute this, except to the extent Principal

Chance-Peart claimed that the reporting was done out of concern for Plaintiff's mental stability, as Plaintiff believes Principal Chance-Peart reported Plaintiff due to her plan to remove her as an older teacher from the school. See Pl.'s Rule 56.1 Counter Stmt. ¶ 52 (citing Ex. 1 at 108, 126-27). Multiple witnesses provided statements consistent with Principal Chance-Peart's observations and allegations of the January 25, 2016 incident. See Ex. BB. Plaintiff disputes the contents of these allegations. See Pl.'s Rule 56.1 Counter Stmt. ¶ 53 (citing Ex. 1 at 126-27).

As a result of the incident that occurred on January 25, 2016, Principal Chance-Peart requested a medical evaluation of Plaintiff to determine her mental and physical capacity to perform her duties. See Ex. CC. Plaintiff does not dispute this, but she adds that the doctor to whom she was sent declared to Plaintiff that Plaintiff was being harassed, that there was nothing wrong with Plaintiff, and that she was fit to perform her job. See Pl.'s Rule 56.1 Counter Stmt. ¶ 55 (citing Ex. 1 at 126-27). Plaintiff does not provide evidence or documentation reflecting this doctor's alleged declaration.[20]

On February 10, 2016, Plaintiff was issued a letter to her file by Assistant Principal Gold for failing to file incident reports. See Ex. S. Assistant Principal Gold's letter indicated that Plaintiff failed to report and file incident reports for two student injuries that occurred in her classroom. See id. The letter stated that one student had been thrown to the floor by another student and had hit his head, and another student had been punched. See id. Plaintiff does not

---

[20] As to the events that took place on January 22, 2016, and January 25, 2016 involving Assistant Principal Gold, the hearing officer in Plaintiff's § 3020-a proceeding found the charges for inappropriate conduct to be substantiated. See Ex. EE at DOE000897-99. The hearing officer found Plaintiff's "account of these two incidents far less convincing," that her "description of the January 22, 2016 disciplinary conference as being uneventful and concluding without incident does not make logical sense," and that Plaintiff's "account of the events of January 25, 2016 is thrown into doubt by its obvious conflict with the testimony" of one of Plaintiff's own witnesses. See id. at DOE000898.

dispute this, to the extent such a letter was issued.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 56.

Plaintiff signed the letter, writing "Attached is a copy of my response to the alligation [sic]."  See

Ex. S.  Plaintiff does not provide evidence of any such response or rebuttal.

On February 11, 2016, Plaintiff was issued a letter to her file by Assistant Principal Gold

as a result of a parent's observation of Plaintiff's classroom.  See Ex. T.  The letter states that, on

November 2, 2015, a parent had a meeting with Assistant Principal Gold regarding her concerns

that her son was being injured by another student in Plaintiff's classroom and that the parent was

unclear what her son was learning in Plaintiff's classroom based on the lack of goal sheets or

parent update letters from Plaintiff.  See id.  The letter indicates that, after this meeting, the

parent observed Plaintiff's classroom.  See id.  Assistant Principal Gold's letter indicated that,

after the observation, the parent had formally requested that her child be removed from

Plaintiff's classroom because it was "chaotic and unorganized."  See id.  The letter also noted

that Plaintiff failed to report an incident report for a fight that occurred in her classroom.  See id.

Plaintiff does not dispute these facts, to the extent such a letter was issued.  See Pl.'s Rule 56.1

Counter Stmt. ¶ 57.  Plaintiff signed the letter stating, among other things, "False information

presented.  More documentation to follow."  See Ex. T.  Plaintiff has not provided evidence of

any such response or rebuttal.

On February 29, 2016, Plaintiff was issued a letter to her file by Assistant Principal Gold

who informed Plaintiff that she failed to submit her Friday Folder as required.  See Ex. U.

Plaintiff does not dispute this, to the extent such a letter was issued.  See Pl.'s Rule 56.1 Counter

Stmt. ¶ 58.  Plaintiff signed the evaluation writing "Harassment.  Response to follow."  See Ex.

U.  Plaintiff does not provide evidence of any such response or rebuttal.  To the contrary,

Plaintiff admits she did not submit her required Friday Folders three times.  See Ex. 1 at 120:12-

19.

On March 16, 2016, Plaintiff was issued a letter to her file by Assistant Principal

Mohamad concerning a failure to supervise her students on February 10, 2016.  See Ex. V.  The

letter indicates that Plaintiff failed to supervise her students which resulted in a student's winter

coat being written on with a black marker and the fur on the hood being ripped off.  See id.

Plaintiff does not dispute this, to the extent she received such a letter.  See Pl.'s Rule 56.1

Counter Stmt. ¶ 59.  Plaintiff signed the letter writing "Response to follow" and "Inaccurate

Information."  See Ex. V.  Plaintiff does not provide evidence of any such response or rebuttal.[21]

On March 30, 2016, Plaintiff was issued a letter to her file by Assistant Principal Gold

that stated that Plaintiff failed to supervise her students, neglected her duties and failed to

complete an incident report concerning a student pushing another student which resulted in

injury on March 16, 2016.  See Ex. W.  Plaintiff does not dispute this, to the extent such a letter

was issued.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 60.  Plaintiff signed the letter writing "False

information" and "Harassment."  See Ex. W.  Plaintiff does not provide evidence to dispute the

substance of the letter.[22]

On May 5, 2016, Plaintiff was issued a letter to her file by Assistant Principal Gold for

Plaintiff's failure to enter data into Dropbox as required.  See Ex. X.  Plaintiff does not dispute

---

[21] The hearing officer in Plaintiff's § 3020-a proceeding found the DOE's evidence insufficient to substantiate the charge that Plaintiff failed to supervise her students on this date because the hearing officer found the evidence proffered by the DOE to be inadmissible hearsay.  See Ex. EE at DOE000899-90.

[22] The hearing officer in Plaintiff's § 3020-a proceeding found the DOE's evidence insufficient to substantiate the charge that Plaintiff failed to supervise her students on this date because the hearing officer found the evidence proffered by the DOE to be inadmissible hearsay.  See Ex. EE at DOE000900-01.

this, to the extent such a letter was issued.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 61.  Plaintiff

signed the letter and wrote on it "I entered chapters 1-4 before the above date and they were

erased.  I have entered most of my chapter grades.  Only two chapters are left to be entered

because was just given last week to be administered."  See Ex. X.  Plaintiff does not provide any

evidence to dispute the substance of the letter.

On May 12, 2016, Plaintiff was issued a letter to her file by Assistant Principal Gold for

failing to submit her required Friday Folders on May 6, 2016.  See Ex. Y.  Plaintiff does not

dispute this, to the extent such a letter was issued.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 62.

Plaintiff does not provide any evidence to dispute the substance of the letter.  In fact, Plaintiff

admits she did not submit her required Friday Folders three times.[23]  See Ex. 1 at 120:12-19.

On May 18, 2016, Plaintiff was issued a letter to her file by Assistant Principal Gold that

Plaintiff failed to follow her duties when she was found to be non-compliant with the school-

wide mandated literacy block on April 12, 2016.  See Ex. Z.  Plaintiff does not dispute this, to

the extent such a letter was issued.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 63.  The letter also states

that after Assistant Principal Gold visited Plaintiff's classroom on April 12, 2016, Assistant

Principal Gold met with Plaintiff and her union representative.  See Ex. Z.  Plaintiff signed the

letter noting that the letter's description of the April 12, 2016 meeting was "inaccurate

information."  See id.  Plaintiff does not provide evidence to dispute the substance of the letter.

On May 18, 2016, Plaintiff was issued a letter to her file by Principal Chance-Peart that

stated that on April 11, 2016, Plaintiff had failed to follow her duties and had been insubordinate

when she had ignored Principal Chance-Peart's directives.  See Ex. AA.  Plaintiff disputes that

---

[23] In Plaintiff's § 3020-a proceeding, the hearing officer found this charge to be substantiated
because Plaintiff "did not dispute" this failure and Assistant Principal Gold's testimony "clearly
established" the "relevant facts."  See Ex. EE at DOE000896-97.

Principal Chance-Peart found Plaintiff failed to follow her duties and found her to be insubordinate, adding that this is an example of fabricated allegations regarding her performance. See Pl.'s Rule 56.1 Counter Stmt. ¶ 64 (citing Ex. 1 at 79-80). The letter also states that on April 12, 2016, Principal Chance-Peart had a meeting with Plaintiff regarding the events observed on April 11, 2016. See Ex. AA. Plaintiff signed the letter but wrote that the purpose of the April 12, 2016 meeting was "for a grievance for me being denied union representation for a meeting held." See id. Plaintiff does not provide evidence to dispute the substance of the letter.

During the 2015-2016 school year, Plaintiff was absent from work a total of 24 times. See Ex. K. A letter dated June 28, 2016 was issued to Plaintiff's file, stating that "[t]his is a warning that the number of absences you have incurred to date are excessive" and that pursuant to "Chancellor's Regulations C-601 and school policy, excessive absence may lead to further disciplinary action which may range from an adverse rating to the institution of proceedings for dismissal or termination." See id. at DOE000322. The absences are all documented as for "Medical" or "Self treated" reasons in Plaintiff's school records. See id. at DOE000321-22. Defendant initially included a charge in Plaintiff's § 3020-a proceeding that she was excessively absent during the 2015-2016 school year, but Defendant withdrew this charge. See Ex. EE at DOE000834, -903.

### v. Comparator Information

#### 1. Ten Older Teachers

Plaintiff claims that ten other teachers over the age of 40 were subjected to harassment or adverse actions while working at P.S. 327 during the time that Ms. Chance-Peart was Principal. See ECF No. 18 ¶¶ 20-21. Plaintiff fails to explain the bases for her statements with few exceptions: As to Mr. Singh and Ms. Previl, Plaintiff observed some interactions between them

and Principal Chance-Peart; as to Ms. Previl, Ms. Laing, Ms. Pryor, Ms. Abdurraham, Ms. Jones and Ms. Robson-Ross, Plaintiff claims that they showed their respective disciplinary letters and/or documents to Plaintiff and Plaintiff submits Ms. Robson-Ross's affidavit; and as to Ms. Pryor, Ms. Bess, Ms. Perullo and Ms. Cohn, Plaintiff claims they told her the information Plaintiff claims is true with respect to these teachers and Plaintiff submits Ms. Cohn's affidavit. Plaintiff's statements about the ten teachers are summarized as follows:

(a) Robert Singh: Plaintiff alleges that Robert Singh was harassed by the administration due to his age and retired as a result. See id. ¶ 20(1). Principal Chance-Peart denies that Mr. Singh, who is approximately 64 years old,[24] was harassed by the administration. See Chance-Peart Decl. ¶ 12(a). Defendant describes Mr. Singh as an eighth-grade math teacher at P.S. 327; during his tenure in that role, the school reported a 0% pass rate for the eighth-grade state-wide math examination, which resulted in all eighth-grade students being required to attend summer school in order to graduate. Defendant contends that Mr. Singh retired from his position at P.S. 327. See id.; Def.'s Rule 56.1 Stmt. ¶ 76. Plaintiff disputes these contentions. She adds that she observed Principal Chance-Peart screaming at Mr. Singh in the hallway and in his room, disrespecting him in front of his students, and claims Principal Chance-Peart subjected him to persistent write-ups and solicited false allegations from students. See Pl.'s Rule 56.1 Counter Stmt. ¶ 76 (citing Ex. 1 at 94-95). The only evidence Plaintiff offers to support these contentions or dispute his retirement is her

---

[24] The Court assumes the ages listed for these ten teachers are in relation to the date of Principal Chance-Peart's declaration, i.e., Mr. Singh was approximately 64 years old as of August 30, 2021. They all would have been at least 40 years of age by the time Ms. Chance-Peart began her tenure as Principal at P.S. 327 in 2014, except for Ms. Cohn, who may have been younger than 40 years old in 2014. See Chance-Peart Decl. ¶¶ 6, 12(h). The record is not clear on this point.

deposition testimony, which other than her alleged observation of Principal Chance-Peart and Mr. Singh interacting, does not include any basis for her claimed information.  See Ex. 1 at 94:24-95:10.  Plaintiff testified that Mr. Singh told her that the impact of the alleged harassment he faced took a toll on his health, but these statements are inadmissible hearsay.  See id. at 96:9-97:9.  The record does not include Mr. Singh's disciplinary letters, performance records or testimony.

(b) Magali Previl: Plaintiff alleges that Magali Previl was harassed and verbally abused, and that her employment was terminated by Principal Chance-Peart.  See ECF No. 18 ¶ 20(2).  Principal Chance-Peart denies that Magali Previl, who is approximately 63 years old, was harassed or verbally abused.  See Chance-Peart Decl. ¶ 12(b). Defendant contends that Ms. Previl was not terminated, but that she was transferred to another school.  See id.  Plaintiff alleges that she observed Principal Chance-Peart screaming at Ms. Previl in front of teachers and students.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 78 (citing Ex. 1 at 97-98).  The only evidence Plaintiff offers to support her contentions is her deposition testimony, which, other than her description of one observation of Principal Chance-Peart allegedly yelling at Ms. Previl and Plaintiff's testimony that she saw Ms. Previl's documents, does not establish any basis for her claimed information.  See Ex. 1 at 97:20-98:18.  Plaintiff also testified that Ms. Johnson told Plaintiff Ms. Previl was terminated; however, such information is inadmissible hearsay.  The record does not include Ms. Previl's records or Ms. Johnson's testimony.

(c) Adonia Cadogan Laing: Plaintiff alleges that false statements were solicited against Adonia Cadogan Laing.  See ECF No. 18 ¶ 20(3).  The parties agree Ms. Laing

25

retired from her position at P.S. 327.  Chance-Peart Decl. ¶ 12(c); Ex. 1 at 99:3-8.

Principal Chance-Peart denies that false statements were solicited against Ms. Laing,

who is approximately 64 years old.  See Chance-Peart Decl. ¶ 12(c).  Plaintiff

testified that such statements were regularly solicited against older teachers.  See Pl.'s

Rule 56.1 Counter Stmt. ¶ 80 (citing Ex. 1 at 95, 99).  The only evidence Plaintiff

offers to support her contentions as to Ms. Laing is her deposition testimony that Ms.

Laing showed Plaintiff her disciplinary letters, but Plaintiff does not state the basis for

her knowledge that these letters were allegedly fabricated.  See Ex. 1 at 99:3-8.  The

record does not include the disciplinary letters or Ms. Laing's performance records.

(d) Lawanda Pryor: Plaintiff alleges that Lawanda Pryor was verbally abused, issued

false ineffective ratings and had a § 3020-a proceeding commenced against her based

on false allegations.  See ECF No. 18 ¶ 20(4).  Principal Chance-Peart denies

Plaintiff's allegations concerning Ms. Pryor.  See Chance-Peart Decl. ¶ 12(d).

Defendant contends that Ms. Pryor, who is approximately 49 years old, had a § 3020-

a proceeding commenced against her as a result of performance-related issues

evidenced by her ineffective overall rating for the 2014-2015 school year, excessive

absenteeism, and ineffective ratings for several informal observations.  See Def.'s

Rule 56.1 Stmt. ¶ 82; Chance-Peart Decl. ¶ 12(d); Ex. RR.  Defendant provides

copies of certain records for Ms. Pryor: (i) Ms. Pryor's overall APPR rating as

"ineffective" for the 2014-2015 school year, see Ex. RR at DOE001380; (ii) Mr.

King's evaluation on December 3, 2015 that found Ms. Pryor "ineffective" in the

following areas: 1) demonstrating knowledge of content and pedagogy, 2) designing

coherent instruction, 3) creating an environment of respect and rapport, 4) managing

student behavior, 5) using questioning and discussion techniques, 6) engaging students in learning, 7) using assessment in instruction, and 8) growing and developing professionally, <u>see</u> Ex. RR at DOE001383-87; (iii) Assistant Principal Gold's evaluation on October 5, 2015 that found Ms. Pryor less than "effective" in the following areas: 1) demonstrating knowledge of content and pedagogy, 2) designing coherent instruction, 3) creating an environment of respect and rapport, 4) managing student behavior, 5) using questioning and discussion techniques, 6) engaging students in learning, 7) using assessment in instruction, and 8) growing and developing professionally, <u>see</u> Ex. RR at DOE001388-402;[25] and (iv) documentation of Ms. Pryor's absences or days she was late during the 2012-2013, 2013-2014 and 2014-2015 school years, <u>see</u> Ex. RR at DOE001369-73.  Defendant contends that Ms. Pryor was not terminated, but that she was transferred to another school.  <u>See</u> Chance-Peart Decl. ¶ 12(d).  Plaintiff disputes these contentions to the extent that Defendant alleges Ms. Pryor's § 3020-a was commenced due to performance issues, and adds that Ms. Pryor's § 3020-a was commenced based on false and pretextual allegations.  <u>See</u> Pl.'s Rule 56.1 Counter Stmt. ¶ 82 (citing Ex. 1 at 99-100).  The only evidence Plaintiff offers to support her contentions and dispute Defendant's evidence is her deposition testimony that Plaintiff spoke to Ms. Pryor.  <u>See</u> Ex. 1 at 100:4-8.  As to what Ms. Pryor told Plaintiff, such information is inadmissible hearsay; the record does not include Ms. Pryor's testimony or any rebuttals to Defendant's records.

(e) Tahira Abdurraham: Plaintiff alleges that Tahira Abdurraham was also issued ineffective ratings based on false allegations.  <u>See</u> ECF No. 18 ¶ 20(5).  Principal

---

[25] This evaluation appears to be in Ms. Pryor's file four times.  <u>See</u> Ex. RR at DOE001388-402.

Chance-Peart denies the allegations concerning Ms. Abdurraham, who is approximately 50 years old, and who transferred to another school following performance-related issues.  See Chance-Peart Decl. ¶ 12(e).  Plaintiff claims that Ms. Abdurraham was written up based on false information.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 84 (citing Ex. 1 at 101).  The only evidence Plaintiff offers to support her contentions and refute Defendant's evidence is her deposition testimony that Plaintiff spoke to Ms. Abdurraham and that Ms. Abdurraham showed Plaintiff her disciplinary letters.  See Ex. 1 at 100:25-101:9.  As to Ms. Abdurraham's alleged statements, such information is inadmissible hearsay.  The record does not include Ms. Abdurraham's records or testimony.

(f) Michelle Jones: Plaintiff alleges that Michelle Jones retired as a result of harassment and had a § 3020-a proceeding commenced against her based on false allegations.  See ECF No. 18 ¶ 20(6).  Principal Chance-Peart denies the allegations concerning Ms. Jones.  See Chance-Peart Decl. ¶ 12(f).  Defendant contends that Ms. Jones, who is approximately 56 years old, retired for medical reasons and that she had had numerous performance-related issues.  See id.  Plaintiff alleges that Ms. Jones was verbally abused and that she was issued false and pretextual write-ups and observations, which Plaintiff claims Ms. Jones shared with Plaintiff.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 86 (citing Ex. 1 at 102-03).  The only evidence Plaintiff offers to support her contentions and refute Defendant's evidence is her deposition testimony.  Plaintiff does not explain the basis for her alleged knowledge except for speaking to Ms. Jones and that Ms. Jones showed documents to Plaintiff.  See Ex. 1 at 103:3-9.  Ms. Jones's alleged statements are inadmissible hearsay.  The record does not include

Ms. Jones's records or testimony.

(g) Ms. Robson-Ross: Plaintiff alleges Ms. Robson-Ross was forced to retire after being subjected to false and pretextual observations and allegations of corporal punishment, and that a § 3020-a hearing was pursued against Ms. Robson-Ross.  See ECF No. 18 ¶ 20(7).  Principal Chance-Peart denies the allegations concerning Ms. Robson-Ross, who is approximately 50 years old.  See Chance-Peart Decl. ¶ 12(g).  Principal Chance-Peart contends that Ms. Robson-Ross retired from her employment and that there were no false allegations made against her.  See id.  Information regarding Ms. Robson-Ross was not included in Defendant's Rule 56.1 Statement.  See generally Def.'s Rule 56.1 Stmt.  Defendant provides copies of certain records for Ms. Robson-Ross: (i) Assistant Principal Gold's evaluation on December 16, 2014 that found Ms. Robson-Ross less than "effective" in the following areas: 1) demonstrating knowledge of content and pedagogy, 2) designing coherent instruction, 3) creating an environment of respect and rapport, 4) using questioning and discussion techniques, 5) engaging students in learning, 6) using assessment in instruction, and 7) growing and developing professionally, see Ex. MM; (ii) Assistant Principal Gold's evaluation on November 19, 2015 that found Ms. Robson-Ross "ineffective" in the following areas: 1) demonstrating knowledge of content and pedagogy, 2) designing coherent instruction, 3) creating an environment of respect and rapport, 4) managing student behavior, 5) using questioning and discussion techniques, 6) engaging students in learning, 7) using assessment in instruction, and 8) growing and developing professionally, see Ex. NN; and (iii) a letter dated October 6, 2015 from Assistant Principal Gold stating that Ms. Robson-Ross committed professional misconduct

when she attempted to tamper with or impede an ongoing corporal punishment investigation by asking her class if they saw her pull a student's ear, see Ex. OO. Plaintiff also testified in her deposition that she spoke to Ms. Robson-Ross, who showed Plaintiff some documents and told Plaintiff she was forced to retire, but that Ms. Robson-Ross did not state who forced her to retire.  See Ex. 1 at 103:23-104:11. As to what Ms. Robson-Ross told Plaintiff, that information is inadmissible hearsay. Plaintiff offers Ms. Robson-Ross's affidavit to support Plaintiff's allegations in the Amended Complaint concerning Ms. Robson-Ross.  See Ex. 3.  The affidavit states that Ms. Robson-Ross believes that "when the new administration came to the school, senior teachers such as myself and Plaintiff began to experience an increase in discipline and issues," that she "began to get written up constantly for false or inaccurate reasons" and that "children in my class [were] asked to change their statements in order to justify disciplining me."  See id. ¶¶ 2-3.  It also states Ms. Robson-Ross believes she was "brought up on charges that were not accurate or were based on all the false discipline the new administration tried to create."  See id. ¶ 3. The affidavit implies that Ms. Robson-Ross believes she was discriminated against based on her age, in that she notes that "senior teachers" began to experience "discipline and issues."  See id. ¶ 2.  The affidavit does not provide details regarding any particular instance of allegedly false charges or discipline.

(h) Fara Cohn: Plaintiff alleges that a § 3020-a hearing was brought against Fara Cohn under false allegations.  See ECF No. 18 ¶ 20(8).  Principal Chance-Peart denies the allegations concerning Ms. Cohn, who is approximately 46 years old.  See Chance-Peart Decl. ¶ 12(h).  Defendant contends Ms. Cohn was a teacher at P.S. 327 and that

a § 3020-a hearing was commenced against Ms. Cohn for performance-related issues, including failure to perform duties and ineffective performance evaluations.  See Def.'s Rule 56.1 Stmt. ¶ 88; Chance-Peart Decl. ¶ 12(h); Exs. HH-KK.  Defendant has provided copies of certain records for Ms. Cohn: (i) Assistant Principal Mohamad's evaluation on June 2, 2015 that found Ms. Cohn less than "effective" in the following areas: 1) demonstrating knowledge of content and pedagogy, 2) designing coherent instruction, 3) creating an environment of respect and rapport, 4) managing student behavior, 5) using questioning and discussion techniques, 6) engaging students in learning, 7) using assessment in instruction, and 8) growing and developing professionally, see Ex. HH; (ii) Mr. King's evaluation on October 26, 2015 that found Ms. Cohn less than "effective" in the following areas: 1) demonstrating knowledge of content and pedagogy, 2) designing coherent instruction, 3) creating an environment of respect and rapport, 4) using questioning and discussion techniques, 5) engaging students in learning, and 6) using assessment in instruction, see Ex. II; (iii) a letter dated November 17, 2015 from Assistant Principal Mohamad stating Ms. Cohn was insubordinate on October 27, 2015 when she refused to implement the CODEX curriculum in the presence of both Principal Chance-Peart and Assistant Principal Mohamad, see Ex. JJ; and (iv) a letter dated April 22, 2016 from Principal Chance-Peart stating she is concerned about the number of Ms. Cohn's absences during the 2015-2016 school year, see Ex. KK.  Plaintiff disputes these contentions, alleging that Ms. Cohn was brought up on "conjured up" charges that were dismissed.  See Pl.'s Rule 56.1 Counter Stmt. ¶ 88 (citing Ex. 2 ¶¶ 6-7).  The only evidence Plaintiff offers to support her contentions is her deposition testimony

and Ms. Cohn's affidavit.  Plaintiff testified in her deposition that the reason she

knows Ms. Cohn was verbally abused by Principal Chance-Peart and the

administration is because Plaintiff spoke with Ms. Cohn.  See Ex. 1 at 105:5-21.  As

to what Ms. Cohn told Plaintiff, that information is inadmissible hearsay.  Ms. Cohn's

affidavit states Ms. Cohn believes that "when the new administration came to the

school, senior teachers such as myself and Plaintiff began to be targeted and

experience an increase in discipline and issues," that she "began to get written up

constantly for false or inaccurate reasons, and the administration was clearly targeting

senior teachers," and that she was "brought up on false and conjured up 3020-a

charges that were dismissed, in total, because they were simply manufactured to try

and get me fired or to pressure me to resign."  See Ex. 2 ¶¶ 3-4, 6.  Ms. Cohn also

states that she "observed Plaintiff being tortured on a daily basis, getting screamed at,

verbally abused, constantly written up and being sent letters to her file, among other

things, and witnessed her pass out as a byproduct of the harassment to which she was

subjected on a daily basis."  See id. ¶ 7.  The affidavit implies that Ms. Cohn believes

she was subjected to discrimination based on her age.  See id. ¶ 3.  The affidavit does

not provide details regarding any particular instance of allegedly false charges or

discipline with respect to either Ms. Cohn or Plaintiff.

(i) Pamela Bess: Plaintiff alleges that Pamela Bess was terminated from P.S. 327 based

on false statements and ineffective observations.  See ECF No. 18 ¶ 20(9).  Principal

Chance-Peart only recalls that Ms. Bess's employment from P.S. 327 was

discontinued and that she is approximately 59 years old.  See Chance-Peart Decl. ¶

12(i).  Defendant contends that Ms. Bess retired from her position at P.S. 327 for

medical-related reasons.  <u>See</u> Def.'s Rule 56.1 Stmt. ¶ 90.  Plaintiff alleges that Ms.

Bess was harassed and that she received many write-ups.  <u>See</u> Pl.'s Rule 56.1 Counter

Stmt. ¶ 90 (citing Ex. 1 at 106).  The only evidence Plaintiff offers to support her

contentions is her deposition testimony that Ms. Bess called Plaintiff and spoke to her

about being harassed by Principal Chance-Peart and Assistant Principal Gold;

Plaintiff does not otherwise provide the basis for her knowledge.  <u>See</u> Ex. 1 at 106:5-

107:1.  Such information is inadmissible hearsay.  The record does not include Ms.

Bess's records or testimony.

(j) Caroline Perullo: Plaintiff alleges that Caroline Perullo was terminated from her

position at P.S. 327 based on false disciplinary write-ups and false evaluations.  <u>See</u>

ECF No. 18 ¶ 20(10).  Principal Chance-Peart denies the allegations concerning Ms.

Perullo, approximately 58 years old.  <u>See</u> Chance-Peart Decl. ¶ 12(j).  Defendant

contends that Ms. Perullo was not terminated, that her employment was discontinued

because she was a new teacher at the time who did not achieve tenure and that her

employment had been provisional.  <u>See</u> <u>id.</u>  Plaintiff alleges that Ms. Perullo was

discontinued, which terminated her employment with the DOE, as a result of false

write-ups and verbal abuse to which she had been subjected.  <u>See</u> Pl.'s Rule 56.1

Counter Stmt. ¶ 92 (citing Ex. 1 at 107).  The only evidence Plaintiff offers to support

her contentions is her deposition testimony that Ms. Perullo spoke to Plaintiff about

being harassed by Principal Chance-Peart and Assistant Principal Gold; Plaintiff does

not otherwise provide the basis for her knowledge.  <u>See</u> Ex. 1 at 107:2-108:1.  As to

Ms. Perullo's alleged statements, such information is inadmissible hearsay.  The

record does not include Ms. Perullo's records or testimony.

## 2.    Teacher Profile

Plaintiff alleges that older and more experienced teachers at P.S. 327 were replaced by younger, less experienced teachers.  See ECF No. 18 ¶ 21.  The only evidence Plaintiff offers to support her contention is her deposition testimony; the affidavits from Ms. Cohn and Ms. Robson-Ross do not provide any evidence that older teachers were replaced by younger teachers.  See Exs. 1-3.  Plaintiff testified in her deposition that "[e]very teacher that was employed by Ms. Chance-Peart, even after [the ten teachers listed in the Amended Complaint] left for one reason or the other, they were all young teachers and most of them, they were first time teachers, teachers in their 20s, most of them."  See Ex. 1 at 108:11-15.  Plaintiff testified that she has "the list of all the teachers who were there before and these new teachers who came in" and stated to Defendant's counsel she "will gladly furnish . . . the list with the names."  See id. at 108:18-20.  Plaintiff has not presented to the Court this purported list of older teachers who were replaced by younger teachers.  Defendant disputes Plaintiff's allegation, offering evidence that during the 2015-2016 school year, eight newly hired teachers were over 40 years of age and only three newly hired teachers were under 40 years of age.  See Chance-Peart Decl. ¶ 14.  During the 2016-2017 school year, seven newly hired teachers were over 40 years of age and eleven newly hired teachers were under 40 years of age.  See id.  During the 2017-2018 school year, eight newly hired teachers were over 40 years of age and eight newly hired teachers were under 40 years of age.  See id.

While Ms. Chance-Peart was Principal of P.S. 327, she hired many F-Status teachers.  Id. ¶ 13.  An F-Status teacher is a teacher who has left retirement to return to teach at a school that needs additional help.  See id.  Principal Chance-Peart hired: Mr. Grames, approximately 70 years old, who returned from retirement to teach violin; Ms. Muller approximately 73 years old,

who returned from retirement to provide academic intervention services; Mr. King, approximately 71 years old, who returned from retirement to provide administrative support; Ms. Smith-Gayle, approximately 68 years old, who returned from retirement to provide administrative support; Ms. Townsley, approximately 73 years old, who returned from retirement to work as a secretary; and Ms. Lavales, approximately 60 years old, who returned from retirement to work as an "ELL teacher."  See id.

Plaintiff does not dispute the hiring numbers for the 2015-2016 or 2017-2018 school years.  See Pl.'s Rule 56.1 Counter Stmt. ¶¶ 94-95.  Plaintiff states she does not have sufficient information to admit or deny facts regarding Principal Chance-Peart's hiring of F-status teachers. See id. ¶¶ 96, 98.

### vi.  Plaintiff's § 3020-a Proceeding

On or about September 16, 2016, the DOE filed formal charges and specifications against Plaintiff and sought Plaintiff's termination in accordance with New York Education Law § 3020-a.[26]  See Ex. DD.  According to the DOE's formal charges, Plaintiff's pedagogical practice was considered ineffective during the 2014-2015 and 2015-2016 school years.  Id. at DOE000414. Plaintiff was described as having "failed, during the 2014-2015 and 2015-2016 school years, to fully and/or consistently implement directives and/or recommendations for pedagogical improvement and professional development . . . ."  Id. at DOE000415-16.  Plaintiff was also described to have used poor judgment, failed to properly execute school lessons on observation

---

[26] Plaintiff testified that she was transferred to work in a non-teaching position at P.S. 178 in the beginning of the 2016-2017 school year and that she continued in this position until her termination in October 2017.  See Ex. 1 at 141:18-143:4.

dates, and engaged in insubordinate conduct.[27]  Id. at DOE000414-15.  A hearing on the charges

and specifications commenced on March 17, 2017, and concluded on June 6, 2017.  See Ex. EE

at DOE000831.  At the hearing, Plaintiff was represented by an attorney, Janet Fashakin, Esq.

See id. at DOE000830.  The hearing was before David J. Reilly, Esq.  Id.

    In addition to the disciplinary letters or evaluations that Plaintiff challenged in her §

3020-a proceeding mentioned above, Plaintiff also argued, and presented some evidence and

witnesses to try to give support thereof, that Principal Chance-Peart, Assistant Principal Gold

and Assistant Principal Mohamad "engaged in a 'witch hunt' against her" and a "conspiracy to

discharge her" based on animus or bias.  See id. at DOE000874-75.  Plaintiff offered as evidence

of intent: 1) Plaintiff and another teacher at P.S. 327, Ms. Glennis Stewart, testified that Principal

Chance-Peart was prone to yell and treat Plaintiff disrespectfully, see id. at DOE000885; 2)

Plaintiff testified that the administration intentionally assigned her a disproportionate number of

the school's fourth grade students who had educational or behavioral challenges, see id.; 3)

Plaintiff testified that she was reassigned from sixth grade to fourth grade, see id. at

DOE000886; 4) Plaintiff testified that the administration coached students to make false reports

against her, see id. at DOE000886-87; and 5) Plaintiff testified that the administration failed to

provide her with necessary remedial assistance, see id. at DOE000875.

    On or about August 18, 2017, the hearing officer found Plaintiff guilty of the following

Specifications:

| Specification Number | Description |
|---|---|
| 1 | Respondent's pedagogical practice was ineffective during the 2014-2015 school year. |

---

[27] The charges also originally described Plaintiff as having excessive absences for the 2015-2016 school year, but Defendant voluntarily withdrew this specification.  See Ex. DD at DOE000415; Ex. EE at DOE000834.

| 2 | Respondent's pedagogical practice was ineffective during the 2015-2016 school year. |
|---|---|
| 3 | Pursuant to the collective bargaining agreements between the Department of Education and United Federation of Teachers (hereinafter collectively referred to as the "CBA"), a peer validator was appointed to evaluate Respondent in a manner consistent with Education Law § 3012(c) during the 2015-2016 school year.  The peer validator agreed with the overall "ineffective" rating given to Respondent for the 2015-2016 school year. |
| 4 | During the 2015-2016 school year, the Department developed and substantially implemented a teacher improvement plan, in accordance with Education Law § 3012(c). |
| 5(a)-(b), (d)-(i) | During the 2014-2015 and 2015-2016 school years, Respondent failed to properly, adequately, and/or effectively plan and/or execute separate lessons as observed on or about each of the following dates:<br>December 2, 2014<br>March 2, 2015<br>June 3, 2015<br>October 8, 2015<br>October 26, 2015<br>February 22, 2016<br>March 2, 2016<br>March 7, 2016 |
| 7 | On or about September 16, 2015, Respondent failed to follow directives, used poor judgment and/or engaged in insubordinate conduct, in that she failed to complete her bulletin board. |
| 8 | On or about October 29, 2015, Respondent neglected her duties, failed to follow school policy and procedure, and/or used poor judgment, in that she failed to effectively manage her students as they transitioned through the hallways. |
| 9 | On or about October 30, 2015, Respondent failed to follow directives, used poor judgment and/or engaged in insubordinate conduct, in that she failed to enter students' Go Math data into Dropbox. |
| 10 | On or about November 20, 2015, Respondent failed to follow directives, used poor judgment and/or engaged in insubordinate conduct, in that she failed to conduct a guided reading group. |
| 11 | On or about December 11, 2015, Respondent failed to follow directives, used poor judgment and/or engaged in insubordinate conduct, in that she failed to submit her feedback folder with the requested work samples. |
| 13 | On or about January 25, 2016, Respondent demonstrated a lack of professionalism, used poor judgment and/or engaged in insubordinate conduct, in that she said to and/or yelled at Assistant Principal Gold words in the nature of "Jesus is going to beat you," "I rebuke you in the name of Jesus," "I bind you up in the name of Jesus," and/or "Jesus will punish you." |
| 16 | On or about May 6, 2016, Respondent failed to follow directives, used poor judgment and/or engaged in insubordinate conduct, in that she failed to |

| | submit her feedback folder with the requested work samples. |
|---|---|
| 17 | Respondent failed, during the 2014-2015 and 2015-2016 school years, to fully and/or consistently implement directives and/or recommendations for pedagogical improvement and professional development, provided in observation conferences with administrators and/or outside observers, instructional meetings, teacher improvement plans, one-on-one meetings with administrators, school-based coaches and/or outside observers, as well as, school-wide professional development, with regard to:<br>a. Proper planning, pacing and/or execution of lessons;<br>b. Using appropriate methods and/or techniques during lessons;<br>c. Designing coherent instruction;<br>d. Creating an environment of respect and rapport;<br>e. Managing student behavior;<br>f. Using assessment in instruction;<br>g. Student engagement; and/or<br>h. Using appropriate questioning and discussion techniques. |

See id. at DOE000903.  The hearing officer found that Plaintiff was not guilty of the following

Specifications:

| Specification Number | Description |
|---|---|
| 5(c) | During the 2014-2015 and 2015-2016 school years, Respondent failed to properly, adequately, and/or effectively plan and/or execute separate lessons as observed on or about June 2, 2015. |
| 6 | On or about November 26, 2014, Respondent violated Chancellor's Regulation A-420, engaged in unprofessional conduct and/or used poor judgment, in that she hit student JL with a book. |
| 14 | On or about February 10, 2016, Respondent neglected her duties, failed to follow school policy and procedure and/or used poor judgment, in that she failed to supervise and monitor students' behavior allowing student DB's coat to be damaged. |
| 15 | On or about March 16, 2016, Respondent neglected her duties, failed to follow school policy and procedure and/or used poor judgment, in that she failed to supervise student AG and/or failed to complete an incident report where AG was pushed on the chair and/or sustained a bruise on her leg and/or pushed down the stairs, and/or pushed into the wall, and/or punched in the stomach and/or thighs and/or AG's personal belongings thrown in the garbage. |

See id.  Specifications 5(c), 6, 14 and 15—along with Specification 12 (relating to Plaintiff's

absences in the 2015-2016 school year), which Defendant had withdrawn—were dismissed.  Id.

In Plaintiff's § 3020-a proceeding, the DOE had the burden of establishing a prima facie

case of Plaintiff's incompetence, then the burden shifted to Plaintiff to rebut the presumption of

incompetence.  See Belfonte v. City of New York, Index No. 651409/2017, 2017 WL 6596761,

at *3 (Sup. Ct. N.Y. Cnty. Dec. 26, 2017).  "In order to establish a prima facie case of

incompetence, a school district must demonstrate that (1) a teacher received two consecutive

ineffective ratings; (2) the evaluation of an independent peer validator similarly resulted in an

ineffective rating; and that (3) the school district developed and substantially implemented a

teacher improvement plan for that teacher after the first-year ineffective rating."  See id. (citing

N.Y. Educ. Law § 3012-c(5-a)(j)).  Under New York Education Law, "'a pattern of ineffective

teaching or performance as defined in Education Law § 3012-c,' i.e., two consecutive ineffective

ratings, 'shall constitute very significant evidence of incompetence.'"  See id. at *2 (citations

omitted).  "If the teacher is unable to successfully rebut the presumption of incompetence, absent

extraordinary circumstances, there shall be just cause for removal."  See id. at *3.

Based on the hearing officer's guilty findings for Specifications 1-4, the hearing officer

found that the DOE established a "pattern of ineffective teaching" under New York Education

Law § 3012-c, such that the rebuttable presumption of incompetence applied.  See Ex. EE at

DOE000881-83.  The hearing officer then found that Plaintiff failed to rebut the presumption of

incompetence.  First, the hearing officer in Plaintiff's § 3020-a proceeding found "no evidence

suggesting that [Principal] Chance-Peart or any of the other administrators held any animus or

bias against her.  Quite the contrary, the record is replete with instances in which the School's

administrators acted diligently to address the identified deficiencies in [Plaintiff's] pedagogy."

See id. at DOE000884.  The hearing officer further found that Plaintiff's claim of a "'witch hunt'

is lacking in evidentiary support and, as such, cannot serve to rebut the presumption of

[Plaintiff's] incompetence."  See id. at DOE000887.  Second, as to the observations underlying

Plaintiff's ineffective ratings, the hearing officer found that Plaintiff "either ignored or failed to challenge successfully the factual basis for her observers' findings" such that "the statutory presumption of her incompetence stands unrebutted."  See id.  Therefore, the hearing officer found Plaintiff's incompetence constituted just cause for her discharge pursuant to New York Education Law § 3012-c.  See id. at DOE000901.  The hearing officer then concluded it was unnecessary to determine a penalty for the remainder of Specifications for which Plaintiff was found guilty, as they were either already captured by the guilty findings on Specifications 1-4 or would entail a lesser penalty than that warranted by the guilty findings on Specifications 1-4, which would be superfluous to her termination.  Id. at DOE000902.

On or about October 4, 2017, Plaintiff was issued a formal termination letter from the DOE that reflected that Plaintiff was terminated effective October 2, 2017.  See Ex. FF.

### c.  The Summary Judgment Motion

Defendant moves for summary judgment, arguing that Plaintiff cannot establish a prima facie case of age discrimination under the NYCHRL.  See Memo. at 10-18.  Defendant argues that Plaintiff has neither adduced evidence that her ineffective performance ratings and termination occurred as a result of her age, nor identified any similarly situated individual outside of Plaintiff's protected class who was treated more favorably than Plaintiff, but who was less qualified.  See id.  Defendant argues that it had legitimate, non-discriminatory reasons for its actions as to Plaintiff and that Plaintiff has not offered evidence that could establish that such reasons were pretextual.  See id. at 18-21.  Defendant also argues that Plaintiff cannot establish her hostile-work-environment claims under the ADEA, NYSHRL and NYCHRL because Plaintiff fails to offer evidence sufficient to prove that the workplace was permeated with discrimination, ridicule or insult and because Plaintiff has not offered evidence that could

40

establish that she was treated less well than others because of her age.  See id. at 22-25.  Plaintiff responds that she has established a prima facie case for age discrimination and that Defendant's reasons for its actions are pretextual.  See Opp. at 7-9.  Plaintiff also argues she has set forth enough facts which, if believed, would demonstrate that she was subjected to a hostile work environment based on her age under the ADEA, NYSHRL and NYCHRL.  See id. at 9-12. Plaintiff further responds that summary judgment should be denied because there are fact issues and credibility determinations that are not appropriately made at summary judgment regarding the manner in which Plaintiff and the other older teachers were treated, and whether that mistreatment was motivated by age.  See id. at 1.

## II.    LEGAL STANDARD

### a.  Summary Judgment

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Benson v. Family Dollar Operations, Inc., 755 Fed. App'x 52, 55 (2d Cir. 2018).  The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 45 (2d Cir. 2019) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  The "mere existence of a scintilla of evidence" is not enough to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the [non-moving party]."  Lamberti v. Motorola Sols., Inc., 604 Fed. App'x 64, 65 (2d Cir. 2015) (internal quotations omitted); see Anderson, 477 U.S. at 252. The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party."

Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000) (citation omitted).  One court has

noted that "[n]otwithstanding the care with which the court must treat employment

discrimination cases, 'the salutary purposes of summary judgment—avoiding protracted,

expensive and harassing trials—apply no less to discrimination cases than to commercial or other

areas of litigation.'  To overcome a properly asserted motion for summary judgment, a non-

moving party must 'do more than simply show that there is some metaphysical doubt as to the

material facts' and must come forward with 'specific facts showing that there is a genuine issue

for trial.'"  Marks v. New York Univ., 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999) (citations omitted).

In order to successfully oppose a motion for summary judgment, the non-movant must do

more than submit "purely conclusory allegations of discrimination, absent any concrete

particulars."  Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).  A court will not draw an

inference of a genuine dispute of material fact from conclusory denials.  See Brown v. Eli Lilly

& Co., 654 F.3d 347, 358 (2d Cir. 2011).  When a motion for summary judgment is properly

supported by documentary and testimonial evidence, the non-moving party must present

sufficient probative evidence to establish a genuine issue of material fact.  See Celotex Corp. v.

Catrett, 477 U.S. 317, 327 (1986); Horror Inc. v. Miller, 15 F.4th 232, 240 (2d Cir. 2021); Zurich

Am. Life Ins. Co. v. Nagel, --- F. Supp. 3d ---, 2022 WL 759375, at *6 n.13 (S.D.N.Y. Mar. 14,

2022) ("self-serving, conclusory affidavits, standing alone, are insufficient to create a triable

issue of fact and defeat a motion for summary judgment" (quotation marks & citations omitted)),

reconsideration denied, 2022 WL 1173885 (S.D.N.Y. Apr. 20, 2022); cf. Lyons v. New York

Life Ins. Co., No. 20 Civ. 3120 (PAE), 2022 WL 837202, at *11 (S.D.N.Y. Mar. 21, 2022)

("Thus, even in the context of a discrimination case, a plaintiff must provide more than

conclusory allegations to resist a motion for summary judgment and courts may grant summary

judgment against discrimination claims in cases lacking genuine issues of material fact."

(internal quotation marks & citations omitted)); Fincher v. Depository Trust & Clearing Corp.,

No. 06 Civ. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) ("[a non-moving

party's] self-serving statement, without direct or circumstantial evidence to support the charge, is

insufficient to defeat a motion for summary judgment"), aff'd, 604 F.3d 712 (2d Cir. 2010).  A

non-movant also cannot rely solely on the pleadings to create issues of fact in opposition to a

motion for summary judgment.  See, e.g., Schoch v. First Fid. Bancorporation, 912 F.2d 654,

657 (3d Cir. 1990).

       Moreover, "if the only evidence cited [by the non-moving party] is self-serving testimony

and no attempt has been made to square that testimony with 'the hard evidence adduced during

discovery,' such testimony is insufficient to defeat summary judgment." See Pfunk v. Cohere

Commc'ns, LLC, 73 F. Supp. 3d 175, 187 (S.D.N.Y. 2014) (citing Deebs v. Alstom Transp.,

Inc., 346 Fed. App'x 654, 656 (2d Cir. 2009)).  If the non-moving party submits evidence that is

"merely colorable," or is not "significantly probative," summary judgment may be granted.

Anderson, 477 U.S. at 249-50 (citations omitted).  "Further, where a party relies on affidavits or

deposition testimony to establish facts, the statements 'must be made on personal knowledge, set

out facts that would be admissible in evidence, and show that the affiant or declarant is

competent to testify on the matters stated.'"  DiStiso v. Cook, 691 F.3d 226, 230 (2d Cir. 2012)

(quoting Fed. R. Civ. P. 56(c)(4) and citing Fed. R. Evid. 602).  Of relevance to the present

motion, a non-moving party cannot rely on evidence inadmissible as hearsay to create a genuine

issue of material fact to survive a motion for summary judgment.  See Hayden v. Walmart

Stores, Inc., 619 Fed. App'x 22, 23-24 (2d Cir. 2015) (affirming summary judgment where the

plaintiff relied on inadmissible hearsay to advance his discrimination claim); Kizer v.

Abercrombie & Fitch Co., No. 12 Civ. 5387 (JS) (AKT), 2018 WL 6106853, at *5 (E.D.N.Y. Nov. 20, 2018) (collecting cases in which courts excluded inadmissible hearsay statements from consideration in resolving summary judgment motions in employment-discrimination cases).

A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Marks, 61 F. Supp. 2d at 88. Where, however, evaluation of the non-movant's proof rests on the credibility of the non-movant versus the movant, a genuine issue exists and summary judgment cannot be granted. "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." See Kaytor v. Elec. Boat Corp., 609 F.3d 537, 546 (2d Cir. 2010) (quoting Fed. R. Civ. P. 56(e) Advisory Committee Note (1963)).

### b. Preclusive Effect Of § 3020-a Proceedings

As noted above, Plaintiff already litigated many issues in this case in her § 3020-a proceeding. See supra Section I.b. Under New York law, collateral estoppel precludes a party from relitigating an issue in a subsequent action or proceeding when "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." Evans v. Ottimo, 469 F.3d 278, 281 (2d Cir. 2006) (citations omitted); see LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002) ("[C]ollateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party whether or not the tribunals or causes of action are the

same." (quotation marks, citation & alteration omitted)).  Findings reached through § 3020-a

hearings, which are quasi-judicial administrative actions, are entitled to preclusive effect.  See

Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist., 411 F.3d 306, 308,

311-12 (2d Cir. 2005); Smith v. New York City Dep't of Educ., 808 F. Supp. 2d 569, 578

(S.D.N.Y. 2011).  "Whether a § 3020-a determination has preclusive effect depends on the

precise issue determined as compared to the issue in the subsequent litigation."  Denicolo v. Bd.

of Educ. of City of New York, 328 F. Supp. 3d 204, 211 (S.D.N.Y. 2018) (citations omitted).

"Section 3020-a decisions are not generic or interchangeable – they vary in their determinations

of fact and law and, therefore, in their preclusive effect."  Id.

Where a § 3020-a proceeding finds a plaintiff is guilty of certain misconduct, a plaintiff is

precluded from both disputing the facts of those same incidences of misconduct and litigating the

issue of whether a defendant had a legitimate reason to discipline a plaintiff.  See Geer v. Gates

Chili Cent. Sch. Dist., No. 17 Civ. 6161L (DGL), 2021 WL 6015716, at *14 (W.D.N.Y. Dec. 21,

2021) (giving preclusive effect to the findings of the hearing officer in the plaintiff's § 3020-a

proceeding that the plaintiff was guilty of misconduct warranting his termination); Severin v.

New York City Dep't of Educ., No. 19 Civ. 775  (MKV) (RWL), 2021 WL 1226995, at *7

(S.D.N.Y. Mar. 31, 2021) (accepting findings of hearing officers that plaintiff engaged in

misconduct, but stating that those findings "do not decisively prove that [the defendants] would

have taken the same actions regardless of [the plaintiff's] allegedly protected speech" (citations

omitted)); Thomas v. Town of Southeast, 336 F. Supp. 3d 317, 325-26 (S.D.N.Y. 2018) (stating

that "Plaintiff rightly contends that the fact that the Hearing Officer recommended that Plaintiff

be terminated based on the disciplinary charges does not preclude this court from finding that he

was terminated in retaliation for opposing unlawful discrimination," but that "[n]evertheless, this

45

Court may give preclusive effect to the factual findings of the Section 75 Hearing Officer, insofar as such findings preclude Plaintiff from arguing facts to the contrary").

If a plaintiff did not raise age discrimination as a defense in her § 3020-a proceeding, such proceeding does not bar a plaintiff's NYCHRL age-discrimination claim based on the same disciplinary events.  See Washington v. New York City Dep't of Educ., No. 16 Civ. 9588 (ER), 2017 WL 4687982, at *7 (S.D.N.Y. Oct. 16, 2017) ("The Second Circuit has held that a finding of just cause for termination or discipline resulting from a § 3020-a hearing does not necessarily preclude the possibility that her termination was 'motivated by unlawful animus[.]'") (quoting Leon v. New York City Dep't of Educ., 612 Fed. App'x 632, 634 (2d Cir. 2015)), aff'd, 740 Fed. App'x 730 (2d Cir. 2018); Williams v. New York City Dep't of Educ., No. 12 Civ. 8518 (RJS) (GWG), 2013 WL 5226564, at *9 (S.D.N.Y. Sept. 17, 2013) (hearing officer's finding that plaintiff had committed certain infractions did "not affect the plaintiff's ability to argue [in her lawsuit] that the charges themselves–even if meritorious–were brought with improper motives"), R&R adopted, 2014 WL 1383661 (S.D.N.Y. Mar. 26, 2014), aff'd, 602 Fed. App'x 28 (2d Cir. 2015).  Where a plaintiff does not expressly raise hostile-work-environment as a defense in her § 3020-a proceeding, she is not barred from bringing hostile-work-environment claims.  See Ferraro v. New York City Dep't of Educ., 404 F. Supp. 3d 691, 709 (E.D.N.Y. 2017) (plaintiff not estopped from pursuing hostile-work-environment claims that were not previously decided at § 3020-a hearing), aff'd, 752 Fed. App'x 70 (2d Cir. 2018).

### c.  NYCHRL Age-Discrimination Claim

The NYCHRL makes it unlawful for an employer to discharge an employee "because of the actual or perceived age" of the employee.  See New York City Admin. Code § 8-107(1)(a)(2).  Courts apply a modified version of the burden-shifting analysis set out in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to NYCHRL discrimination claims; "the NYCHRL [has] simplified the discrimination inquiry: the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason.  The employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that 'discrimination play[ed] no role' in its actions."  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 n.8 (2d Cir. 2013) (quoting Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 76, 78 n.27 (1st Dep't 2009)) (further citations omitted). Courts must analyze NYCHRL claims "separately and independently from any federal and state law claims," and the NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  Id. at 109 (citation omitted).  On a motion for summary judgment, a court must review the NYCHRL discrimination claim considering the totality of circumstances and "overall context" of the challenged conduct.  Id. at 111, 113.

A plaintiff may establish an inference of discrimination in violation of NYCHRL by direct evidence, such as explicit, age-based epithets; however "[s]tray remarks [], even if made by a decision-maker, do not, without more, constitute evidence of discrimination."  Melman v. Montefiore Med. Ctr., 98 A.D.3d 107, 125 (1st Dep't 2012).  Because direct evidence is rare, a plaintiff may show an inference of discrimination by showing she "was treated differently than a worker who was not a member of that protected class" and is able to "link the adverse employment action to a discriminatory motivation."  Sotomayor v. City of New York, 862 F. Supp. 2d 226, 258 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013) (citations omitted).  The First Department has urged plaintiffs in age-discrimination cases to proffer evidence showing

how an alleged adverse action "was not applied equally to all employees."  See Kosarin-Ritter v.

Mrs. John L. Strong, LLC, 117 A.D.3d 603, 604 (1st Dep't 2014).

To demonstrate differential treatment, a plaintiff must identify appropriate comparators

and present a sufficiently developed record from which a jury could conclude that the

comparators received preferential treatment.  See Leader v. The City of New York, Index No.

451619/2016, 2020 WL 1248749, at *12 (Sup. Ct. N.Y. Cnty. Mar. 16, 2020) (granting summary

judgment on NYCHRL age-discrimination claim where "[t]he limited information provided by

plaintiff is conclusory and does not indicate whether the cited employees were similarly situated,

and, unsupported by any expert testimony, otherwise fails to support an inference of

discriminatory motive" (internal quotation marks & citations omitted)); Whitfield-Ortiz v. New

York City Dep't of Educ., 116 A.D.3d 580, 581 (1st Dep't 2014) (claim dismissed where no

showing that "similarly situated individuals who did not share plaintiff's protected characteristics

were treated more favorably than plaintiff"); see also Simmons v. Akin Gump Strauss Hauer &

Feld, LLP, 508 Fed. App'x 10, 14 (2d Cir. 2013) (affirming dismissal of a NYCHRL race-

discrimination claim where the plaintiff "failed to raise a triable issue as to whether she was

treated less well than other employees based in whole or in part on discrimination").  To

overcome a motion for summary judgment, the plaintiff must point to specific information in the

record to substantiate claims that a supposed comparator or "other younger employees" are

similarly situated to the plaintiff and that they were treated better.  See Ping Chow Wei v.

Antehm Inc., No. 16 Civ. 468 (SFJ) (AKT), 2018 WL 5622571, at *12 (E.D.N.Y. Sept. 4, 2018)

(granting summary judgment on NYCHRL age-discrimination claim where the record did not

substantiate Plaintiff's claims of disparate treatment, or include evidence regarding whether a

supposed comparator or "other young employees" and "all of the younger employees" were

similarly situated to her); Fenner v. News Corp., No. 09 Civ. 9832 (LGS), 2013 WL 6244156, at

*14, *18 (S.D.N.Y. Dec. 2, 2013) (granting summary judgment to defendants on NYCHRL

discrimination claim where "[p]laintiffs argue that they were treated worse than their white

colleagues in a multitude of ways—lower pay, inferior assignments, dismissive supervisors, less

access to resources—but they have not supported their allegations with evidence that white

employees were treated better").

A plaintiff may also point to statistical evidence concerning the treatment of other

employees within her protected class to bolster her claim of discrimination.  See Shapiro v. City

of New York, No. 13 Civ. 8647 (DLC), 2015 WL 4002437, at *9 (S.D.N.Y. July 1, 2015)

("Although statistics play a much more substantial role in disparate impact cases, they are

admissible to support a claim of discrimination even in a disparate treatment case involving a

single plaintiff.") (quoting Stratton v. Dep't for the Aging for City of New York, 132 F.3d 869,

877 (2d Cir. 1997)), aff'd, 649 Fed. App'x 71 (2d Cir. 2016).  A plaintiff's reliance on proof of

an alleged pattern of discrimination against other members of a plaintiff's protected class is not

alone sufficient to meet a plaintiff's burden of persuasion under the McDonnell Douglas

framework in the NYCHRL context.  See Pollock v. Shea, 568 F. Supp. 3d 500, 512 (S.D.N.Y.

2021); see also Chin v. Port Auth. of New York & New Jersey, 685 F.3d 135, 149 (2d Cir. 2012)

(reasoning that "[p]ermitting private plaintiffs to use the pattern-or-practice method of proof

outside the class action context" would "conflict with the Supreme Court's oft-repeated holding

in the context of disparate-treatment, private nonclass litigation that the ultimate burden of

persuading the trier of fact that the defendant intentionally discriminated against the plaintiff

remains at all times with the plaintiff" (internal quotation marks & citation omitted)).  The

Second Circuit has cautioned against attributing much, if any, significance to the fact that

another member of the protected class suffered an adverse employment action along with a plaintiff.  See Zimmermann v. Assocs. First Cap. Corp., 251 F.3d 376, 382 (2d Cir. 2001); Pollis v. New Sch. for Soc. Rsch., 132 F.3d 115, 121 (2d Cir. 1997) ("A statistical showing of discrimination rests on the inherent improbability that the institution's decisions would conform to the observed pattern unless intentional discrimination was present.  The smaller the sample, the greater the likelihood that an observed pattern is attributable to other factors and accordingly the less persuasive the inference of discrimination to be drawn from it.").  The sample size of a plaintiff's numerical evidence must also be large enough to be statistically significant.  See Self v. New York City Dep't of Educ., 844 F. Supp. 2d 428, 437 (S.D.N.Y. 2012) (holding sample size of eight to ten black teachers that were allegedly mistreated statistically insignificant and insufficient to prove pretext of race discrimination); Paolercio v. Allstate Ins. Co., No. 09 Civ. 983 (NGG) (JO), 2011 WL 4628748, at *7 (E.D.N.Y. Sept. 30, 2011) (granting summary judgment on ADEA disparate-impact claim where plaintiff claimed "several older employees . . . stepped down or were terminated" because the Court "is unable to draw any conclusion as to the statistical significance of a small number of terminations, as [the plaintiff] has presented no evidence regarding how many workers there were in the entire protected group"); Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 340 (1977) ("We caution only that statistics are not irrefutable; they come in infinite variety and, like any other kind of evidence, they may be rebutted.  In short, their usefulness depends on all of the surrounding facts and circumstances." (citation omitted)).

If a plaintiff establishes her prima facie case of age discrimination, the burden shifts to the defendant to show a legitimate and non-discriminatory reason for the actions taken against a plaintiff.  If the defendant "establish[es] legitimate reasons for [disciplining or] discharging [a

plaintiff], [the plaintiff] must present specific, factual evidence that [s]he was treated 'less well' than other employees, at least in part because of [her] age." Zurich, 2022 WL 759375, at *23 (citations omitted). Under the NYCRHL, a "mixed-motives" analysis is applicable; to survive summary judgment on her claims of discrimination, Plaintiff must raise a triable issue as to whether age discrimination was a motivating factor for any differential treatment, even if it was not the sole motivating factor. See Dietrich v. City of New York, No. 18 Civ. 7544 (CM), 2020 WL 4226591, at *15 (S.D.N.Y. July 23, 2020).

If a defendant establishes a legitimate and non-discriminatory reason for its actions, the burden shifts back to the plaintiff to show that the defendant's reasons are pretextual. For example, where the discrimination claim is based on alleged fabricated performance reviews, a "plaintiff's subjective disagreement with [her performance] reviews" will not suffice to rebut the defendant's proffered non-discriminatory reasons. See Sotomayor, 862 F. Supp. 2d at 259 (quoting Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999)). "That an evaluation is tainted by discriminatory motives can be shown if [the plaintiff] can point to [a] similarly situated employee who was evaluated differently." See id. An inference of discrimination "can be rebutted when multiple evaluators all express dissatisfaction with the plaintiff's performance." See id. (citing Baluta v. Hicksville Union Free Sch. Dist., No. 94 Civ. 1871 (FB), 2000 WL 335770, at *5 (E.D.N.Y. Mar. 15, 2000)) (further citations omitted).

A plaintiff may also point to statistical evidence allegedly demonstrating a pattern of similarly adverse treatment of other employees within her protected class to demonstrate pretext; however, the "bare collateral circumstance" that other protected-age employees were replaced by younger employees cannot alone defeat a summary judgment motion based on "uncontroverted evidence of legitimate, nondiscriminatory reasons for the employment decisions concerning

plaintiff." See Melman, 98 A.D.3d at 123. A plaintiff must show that these comparators in her same protected group are similarly situated to her. See Harewood v. New York City Dep't of Educ., No. 18 Civ. 5487 (KPF), 2021 WL 673476, at *12 (S.D.N.Y. Feb. 22, 2021), aff'd, 2022 WL 760739 (2d Cir. Mar. 14, 2022). A plaintiff must also provide context to show that the purported negative outcomes for the comparators in her same protected group are linked to animus. See Self, 844 F. Supp. 2d at 437 (finding no evidence to conclude the "unsatisfactory" ratings provided to other black teachers were based on race); Melman, 98 A.D.3d at 124-25 (finding "plaintiff's cherry-picking of a handful of cases in which older physicians were asked to leave" failed to raise a triable issue as to the existence of a pattern of age discrimination where the record "fail[ed] to flesh out the facts underlying the departures of other older departmental chairmen").

In an age-discrimination case, a plaintiff must point to evidence, beyond her own conclusory statements, from which a reasonable juror could conclude that age was a motivating factor in the decision to terminate her. See Rockman v. USI Ins. Servs. LLC, No. 19 Civ. 5997 (VEC), 2021 WL 3621685, at *7-8 & n.13 (S.D.N.Y. Aug. 16, 2021) (granting summary judgment on the plaintiff's NYCHRL age-discrimination claim where there was no evidence in the record that anyone made a derogatory comment about the plaintiff's age and the plaintiff failed to point to any other evidence in the record other than his own statements); Twomey v. Quad/Graphics, Inc., No. 13 Civ. 1109 (RA), 2015 WL 5698002, at *10 (S.D.N.Y. Sept. 28, 2015) (granting summary judgment on the plaintiff's age-discrimination claim under the NYCHRL where the plaintiff failed to "offer some proof beyond his own assertions that age was a factor considered by [his employer]"); Rodriguez v. City of New York, No. 09 Civ. 1378 (KAM) (RER), 2011 WL 3610751, at *12 (E.D.N.Y. Aug. 16, 2011) (granting defendant's

52

motion for summary judgment on plaintiff's NYCHRL age-discrimination claim where the record failed to establish that age was a motivating factor in plaintiff's termination), aff'd, 484 Fed. App'x 637 (2d Cir. 2012).

###### d.   NYCHRL Hostile-Work-Environment Claim

NYCHRL hostile-work-environment claims must be evaluated separately from federal and state hostile-work-environment claims.  See Kolenovic v. ABM Indus. Inc., 361 Fed. App'x 246, 248 (2d Cir. 2010) (citing Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009)), for the proposition that the Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005), "abolish[ed] 'parallelism' between the [NYCHRL] and federal and state anti-discrimination law").  That is because NYCHRL hostile-work-environment claims do "not require . . . severe and pervasive conduct," Mihalik, 715 F.3d at 114, but only a plaintiff's proof that she has been "treated less well than other employees" because of her membership in a protected class, Rozenfeld v. Dep't of Design & Constr. of City of N.Y., 875 F. Supp. 2d 189, 209 (E.D.N.Y. 2012), aff'd, 522 Fed. App'x 46 (2d Cir. 2013).  "The NYCH[R]L does not differentiate between hostile work environment claims and discrimination claims; rather, both are governed by New York City Administrative Code § 8-107(1)(a).  This provision makes it 'an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof . . . to discriminate against [a] person in compensation or in terms, conditions or privileges of employment' based on actual or perceived membership in a protected group."  Gelin v. City of New York, No. 10 Civ. 5592 (CBA) (VVP), 2013 WL 2298979, at *12 (E.D.N.Y. May 24, 2013).

###### e.   ADEA And NYSHRL Hostile-Work-Environment Claims

An actionable hostile-work-environment claim under the ADEA requires the plaintiff to

show that the workplace is "permeated with discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." See Davis-Garett, 921 F.3d at 41 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond [the ADEA's] purview." Id. (quoting Harris, 510 U.S. at 21-22).

"To withstand summary judgment, a plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Dash v. Bd. of Educ. of City Sch. Dist. of New York, 238 F. Supp. 3d 375, 386 (E.D.N.Y. 2017) (quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000). "There is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment; rather, we view the circumstances in their totality[.]" Alfano v. Costello, 294 F.3d 365, 379 (2d Cir. 2002). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Redd v. New York Div. of Parole, 678 F.3d 166, 175 (2d Cir. 2012) (quoting Harris, 510 U.S. at 23 (1993)).

According to the Second Circuit, it is axiomatic that a plaintiff bringing an ADEA claim based on a hostile work environment must show that the offending conduct was motivated by the plaintiff's age. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 241 (2d Cir. 2007). The importance of this element cannot be overstated. Under the ADEA, a plaintiff makes a

54

prima facie case of an employer's actionable discrimination by showing that his or her age was

the "but for" cause of the complained-of disparate treatment; the ADEA does not permit a

"mixed motives" theory of recovery.  See Delaney v. Bank of Am. Corp., 766 F.3d 163, 168 (2d

Cir. 2014); Price Waterhouse v. Hopkins, 490 U.S. 228, 240 (1989) ("In determining whether a

particular factor [such as a plaintiff's age] was a but-for cause of a given event, we begin by

assuming that that factor was present at the time of the event, and then ask whether, even if that

factor had been absent, the event nevertheless would have transpired in the same way.").  "For an

ADEA claim, plaintiff has to show that age was the only reason for the unwanted conduct."

Abadir v. Ctr. One, LLC, No. 14 Civ. 855S (WMS), 2020 WL 4474070, at *13 (W.D.N.Y. Aug.

4, 2020) (citation omitted).

     The same but-for standard applies to a hostile-work-environment claim under the

NYSHRL.  See Barbini v. First Niagara Bank, N.A., No. 16 Civ. 7887 (NSR), 2022 WL 623184,

at *25 (S.D.N.Y. Mar. 3, 2022) ("The standards for evaluating hostile work environment claims

are identical under Title VII, the ADEA, and the NYSHRL." (citation omitted)).[28]

## III.  DISCUSSION

### a.  Testimonial Evidence Submitted By Plaintiff

     Plaintiff's opposition to summary judgment attached three exhibits—the transcript of

Plaintiff's deposition and two affidavits from teachers at Plaintiff's former school, Fara Cohn

---

[28] Although the NYSHRL was amended, effective August 12, 2019, to direct courts to construe the NYSHRL "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL], have been so construed," N.Y. Exec. Law § 300, the amendment does not have retroactive effect to Plaintiff's employment period, see McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 68-69 (S.D.N.Y. 2020).  At any rate, this Court finds, as discussed infra, Section III.b, that Plaintiff's discrimination claims fail to survive even under the more liberal standard of the NYCHRL.

("Cohn") and Queen Robson-Ross ("Robson-Ross").  See Exs. 1-3.  As an initial matter, the

Court asked Defendant to "take up the question of whether some or all of [Plaintiff's] affidavits

should not be cognizable as evidence at the summary judgment stage, for reasons either of civil

procedure or evidence or otherwise."  See ECF No. 59, Tr. 15:8-12.  Although Defendant argues

that the Cohn and Robson-Ross affidavits fail to establish sufficient evidence regarding an

inference of discrimination or to support Plaintiff's hostile-work-environment claims, see Memo.

at 14-17, 24, Defendant declined to accept the Court's invitation and does not move to exclude

these affidavits for any procedural or evidentiary reason.  This Court, therefore, only briefly

addresses the question below.[29]

Rule 56(c) lists the types of materials that may be relied on by the court in determining

whether there is any genuine issue of material fact in dispute, including "depositions, documents,

electronically stored information, affidavits or declarations, stipulations . . . , admissions,

interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  An affidavit "used to

support or oppose a motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify on the

matters stated."  Fed. R. Civ. P. 56(c)(4).  Here, the sworn affidavits of Ms. Cohn and Ms.

Robson-Ross concern their employment at P.S. 327 and their first-hand observations.  See Exs.

2-3.  There is no apparent reason Ms. Cohn and Ms. Robson-Ross are not competent to testify on

the matters stated within.  Therefore, the Court may properly consider these affidavits as part of

Plaintiff's opposition to Defendant's motion for summary judgment.  In contrast, Plaintiff's own

---

[29] The Cohn and Robson-Ross Affidavits were not produced during discovery.  When Plaintiff's
counsel indicated his intention to include affidavits from teachers as part of his opposition to
Defendant's forthcoming motion for summary judgment, the Court ordered Plaintiff to provide
the affidavits to Defendant prior to the date Defendant was to serve its motion for summary
judgment for purposes of efficiency.  See ECF No. 59, Tr. 11:7-12:21, 14:8-15:1.

testimony presents several evidentiary problems, particularly her reliance on hearsay evidence. See supra Section II.b.  As to whether the content of the affidavits of Plaintiff's testimony reveals a genuine dispute of material fact is a different question, discussed below.  See infra Section III.b.

### b.  NYCHRL Age Discrimination

#### i.  Inference of Discrimination

Defendant contends that Plaintiff has failed to establish an inference of discrimination. See Memo. at 10-18.  Plaintiff does not rest her age-discrimination claim on direct evidence, i.e., age-based epithets.  Plaintiff argues that her NYCHRL age-discrimination claim can survive summary judgment, stating she has "provided substantial evidence . . . [1] regarding the disparate treatment between [Plaintiff and members of her protected class] and younger teachers with respect to training and discipline, and [2]] Plaintiff ha[s] outlined a pattern of the administration at the school of targeting older teachers in an effort to force them to resign or retire, or in order to pursue termination against them."  Opp. at 8-9.  Defendant has the better argument because Plaintiff's conclusory arguments are unsupported by admissible evidence sufficient to raise disputed issues of material fact.[30]

The Court briefly notes that Plaintiff's counsel has been aware for years of the standard that must be met to show disparate treatment under the NYCHRL.  During the April 26, 2019 Court discovery conference, the Court discussed with Plaintiff's counsel the likely need for a plan to collect comparator information, including possibly to identify individuals who were

---

[30] Because the Court finds that Plaintiff has failed to demonstrate disparate treatment, Plaintiff has failed to demonstrate an inference of discrimination, as her allegations regarding a pattern of discrimination at P.S. 327 cannot alone satisfy her burden.  See supra Section II.c.  Therefore, the Court discusses Plaintiff's allegations and proffered evidence regarding the pattern of discrimination in its discussion of pretext below.  See infra Section III.b.iii.

younger in age than Plaintiff who may also have received ineffective ratings or who were issued various disciplinary letters, but who were not terminated or otherwise treated "less well."  See ECF No. 33, Tr. 11:4-7; id. at 13:10-19 (Plaintiff's counsel: ". . . I mean, I think from my perspective I think I can establish our claims in our prima facie case if I can establish through witness statements, depositions and documentation that is obtained through discovery that this group of people were all targeted and treated in the same manner and then there was a segment of younger teachers who engaged in similar conduct or – you know, or that were not similarly treated or that were not disciplined in the same manner for the same type of things."); id. at 14:8-16.

Despite Plaintiff's counsel's confidence, the record does not raise genuine issues of disputed material fact as to disparate treatment of Plaintiff as compared to younger teachers.  A non-movant cannot rely solely on the pleadings to create issues of fact in opposition to a motion for summary judgment.  See, e.g., Schoch, 912 F.2d 654 at 657.  Although Plaintiff's allegations and some of her claims in the Amended Complaint—that younger teachers "were not similarly subjected to false discipline, false negative observations and evaluations, pretextual disciplinary hearings, or the verbal abuse," see ECF No. 18 ¶ 21, to which Plaintiff or other older teachers were subjected—were sufficient to survive the motion to dismiss, the evidence now offered to support the allegations is not sufficient for Plaintiff's claim to survive the motion for summary judgment.  Plaintiff's evidence does not provide information about the younger alleged comparators other than what is alleged in the Amended Complaint.  Plaintiff has not named a single purported younger comparator, let alone provided information to establish such a person is similarly situated to Plaintiff.  The Cohn and Robson-Ross affidavits likewise do not describe younger comparators; they only make generalized statements about greater discipline issues for

"senior teachers." See Ex. 2 ¶ 3; Ex. 3 ¶ 2.

Plaintiff's deposition testimony states that there were younger teachers who were "given the professional development that they need" and that younger teachers were the ones who "get the effective ratings." See Ex. 1 at 78:24-80:3. Plaintiff fails to establish or explain why providing professional development opportunities to newer teachers—as opposed to seasoned teachers—is disparate treatment. Plaintiff does not show that she or other older teachers did not receive appropriate training or professional support. In fact, Plaintiff was offered assistance via her 2015-2016 TIP, and the hearing officer at Plaintiff's § 3020-a proceeding found that this TIP was "both developed and substantially implemented" for Plaintiff. See Ex. J; Ex. EE at DOE000882. Plaintiff also testified that older teachers were "screamed at in the building" and that "[s]ometimes these new teachers, we see so many things happening that they were not written up for it." See Ex. 1 at 78:24-80:3. "Other than [Plaintiff's] bald, self-serving declarations" implying that younger teachers were given effective ratings that they did not deserve or were given more leniency with write-ups, and two affidavits generally stating some teachers were treated unfairly, "there is nothing in the present record to substantiate these claims." See Wei, 2018 WL 5622571, at *12; Leader, 2020 WL 1248749, at *12; Whitfield-Ortiz, 116 A.D.3d at 581.

Although the question of whether employees are similarly situated is generally a question of fact for a jury, "this rule is not absolute and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." See Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790-91 (2d Cir. 2007) (internal quotation marks & citation omitted). Plaintiff does not identify the younger teachers who were reviewed, who received better ratings than they merited or who were not "written up" when they should have

been, or provide any information such as professional records to substantiate Plaintiff's assessment of such teachers' performances or conduct. She does not identify younger teachers who were not yelled at or mistreated. Because Plaintiff has not offered evidence to establish that there are any alleged comparators who were similarly situated to her, but who were alleged to have been treated differently than her, Plaintiff cannot prove an inference of discrimination as part of her prima facie case of age-discrimination. See Wei, 2018 WL 5622571, at *12; Fenner, 2013 WL 6244156, at *14, *18.

### ii. Defendant's Legitimate, Non-Discriminatory Reasons For Actions Taken Against Plaintiff

Although Plaintiff's NYCHRL age-discrimination claim cannot survive this motion for summary judgment based on Plaintiff's failure to establish her prima facie case of age discrimination, for completeness, the Court continues its analysis. Even if Plaintiff had established a prima facie case of age discrimination, she could not survive this motion for summary judgment because Defendant has offered undisputed evidence of legitimate and non-discriminatory business reasons for its actions, but Plaintiff has not offered admissible evidence to raise a disputed issue of material fact as to pretext.

Defendant has offered several legitimate, non-discriminatory and unrefuted reasons for the outcomes of Plaintiff's observations and evaluations and the letters issued to her file after November 15, 2015, and the initiation of § 3020-a proceedings against Plaintiff. As described more fully in the factual background section above, see supra Section II.b, between December 2014 and May 2016, Plaintiff's classroom lessons were observed and evaluated no fewer than nine times by six different DOE administrators, each of whom found Plaintiff's job performance to be unsatisfactory, which rebuts an inference of discrimination. See Sotomayor, 862 F. Supp. 2d at 259. These evaluators included Principal Chance-Peart, Assistant Principal Gold and

Assistant Principal Mohamad; two F-status Principals, Ms. Smith-Gayle and Mr. King; and Peer Validator Mr. Connors.  See supra Section II.b.  Plaintiff does not allege that Ms. Smith-Gayle, Mr. King or Mr. Connors discriminated against her on the basis of age.  See id.  As to each of the disciplinary letters, the school administrators provided detailed reasons for the issuance of each one in the letters themselves, some of which involved secondary investigations, and Plaintiff had an opportunity to respond to the allegations directly, through her union representative or in her § 3020-a proceeding.  See id.

Plaintiff testified that she filed a grievance regarding her overall ineffective rating for the 2014-2015 school year and that her ineffective rating was substantiated.  See Ex. 1 at 76:5-12; Ex. EE at DOE000845 ("[Plaintiff's] appeal of that rating, she stated, was denied by a decision of Deputy Chancellor Philip Weinberg, acting as the Chancellor's designee.").  Plaintiff's § 3020-a proceeding resulted in a presumption of incompetence that Plaintiff did not rebut in her § 3020-a proceeding.  See Ex. EE at DOE000881-90.  Plaintiff was also found guilty of charges that she violated multiple DOE policies: 1) failure to effectively plan and/or execute lessons; 2) failure to follow directives; 3) neglecting her duties by failing to effectively manage her students; 4) failure to enter her students' Go Math data in the computer system by the deadline; 5) failure to comply with the school's mandate to conduct a daily guided reading session; 6) failure to submit her Friday Folders; 7) engaging in inappropriate conduct towards Assistant Principal Gold; and 8) during both the 2014-2015 and 2015-2016 school years, failing to implement the administration's directives and/or recommendations for improving pedagogy in multiple areas.  See Ex. EE at DOE000890-99, -901.  These independent determinations from the Chancellor's designee and the hearing officer in Plaintiff's § 3020-a proceeding—both against whom Plaintiff does not allege age discrimination—support Defendant's legitimate, non-discriminatory reasons.

See Hawana v. City of New York, 230 F. Supp. 2d 518, 528-29 (S.D.N.Y. 2002) (recognizing that an independent decision, which is not itself subject to a claim of discrimination, attenuates plaintiff's proof of a causal discriminatory link).

In summary, Defendant has met its burden to offer evidence sufficient to demonstrate legitimate, non-discriminatory reasons for Plaintiff's performance reviews and letters to file as well as for initiating the § 3020-a proceeding.

### iii. Pretext

If Defendant "establish[es] legitimate reasons for [disciplining or] discharging [Plaintiff], [Plaintiff] must present specific, factual evidence that [s]he was treated 'less well' than other employees, at least in part because of [her] age." Zurich, 2022 WL 759375, at *23 (citations omitted). Plaintiff argues that Defendant engaged in a discriminatory pattern of targeting older teachers in an effort to force them to resign or retire, or in order to pursue termination against them, which demonstrates Defendant's pretext. See Opp. at 8-9. Plaintiff also argues that Defendant's proffered legitimate, non-discriminatory reasons for Plaintiff's discipline are pretextual because "there is evidence that these alleged performance issues were false and fabricated such that the veracity of those performance issues are at question and should be determined by a jury." See id. at 9. As explained below, Plaintiff has not offered sufficient evidence to raise a disputed issue of material fact as to pretext.

### 1. Pattern of Targeting Older Teachers

Plaintiff offers different types of evidence to attempt to raise a material issue of fact as to whether Defendant had a policy and/or pattern of targeting older teachers in order to force them to resign or retire, or to initiate termination proceedings against them. The Court discusses each in turn.

### a. Plaintiff's Testimony

Plaintiff contends that Superintendent de Govia issued a "mandate" to Principal Chance-Peart to "get rid of older teachers." See Ex. 1 at 76:17-22. Defendant contends such a mandate was never issued. Plaintiff argues the alleged mandate was "widely known to have occurred by the staff within the school." See Pl.'s Rule 56.1 Counter Stmt. ¶ 14 (citing Ex. 1 at 78-79). The evidence Plaintiff offers to dispute Defendant's contention that there was no such mandate is her deposition testimony that she heard other teachers stating that Principal Chance-Peart received a mandate to get rid of older teachers. See Ex. 1 at 76:23-78:16. These inadmissible hearsay statements by other teachers are insufficient to create a dispute of material fact. See Hayden, 619 Fed. App'x at 23-24; Kizer, 2018 WL 6106853, at *5. Plaintiff's own unsubstantiated belief of such a mandate is insufficient.

### b. The Cohn And Robson-Ross Affidavits

Plaintiff claims in her Opposition that the two affidavits she submits from Ms. Cohn and Ms. Robson-Ross outline a pattern of discrimination against older teachers at P.S. 327. See Opp. at 8-9. These affidavits, whether considered separately or together, do not contain evidence sufficient to raise an issue of material fact as to whether such a pattern of age discrimination existed at P.S. 327.

First, neither Ms. Cohn nor Ms. Robson-Ross's affidavit states the respective affiants' ages—either at the time of the affidavit or when employed at P.S. 327.

Second, neither affidavit provides sufficient details to permit a fact finder to conclude that any alleged event described by the affidavits was motivated by age animus. Both affidavits state that "after this administration came," Ms. Cohn and Ms. Robson-Ross "began to get written up constantly for false or inaccurate reasons" as part of the administration's plan of targeting

older teachers.  See Ex. 2 ¶ 4; Ex. 3 ¶ 3.  The affidavits do not provide facts regarding these alleged falsified write-ups, including when they were prepared, who was involved, what the nature of the allegedly fake write-ups were, or what the correct record of events should have been, if the events happened at all.  Ms. Robson-Ross's affidavit states that a teacher named Ms. Jones "was pressured treated [sic] so hostile that she actually had a breakdown in school and had to be taken away by ambulance."  Ex. 3 ¶ 4.  The affidavit fails to provide any facts about the incident that could demonstrate that Ms. Jones was treated in a hostile manner because of her age.  Ms. Cohn's affidavit states that she observed "Plaintiff being tortured on a daily basis, getting screamed at, [and] verbally abused" but, again, the affidavit does not provide facts about when the allegedly wrongful conduct occurred, who was involved, under what circumstances it occurred, what was said or what the nexus to age was.

Third, these two affidavits do not offer any evidence as to the alleged plan to reduce the overall age of the staff.  These affidavits together, even with Plaintiff's deposition testimony, fail to provide evidence to create a dispute of material fact as to any age-related motivation or actions of Defendant.  See Zurich, 2022 WL 759375, at *6 n.13; cf. Lyons, 2022 WL 837202, at *11.

### c.  Numerical Evidence

Plaintiff also provides evidence regarding teachers she claims were over the age of 40 and subjected to over-scrutiny, false negative reviews and, for some, § 3020-a proceedings, and that after these teachers were driven out of P.S. 327, they were replaced by younger teachers.  See ECF No. 18 ¶¶ 20-21.  Defendant contends that these teachers were not terminated unfairly or harassed into resigning.  See generally Chance-Peart Decl.; Exs. HH-KK, MM-OO, RR.  The

admissible, competent evidence, if believed, could establish the following:[31] 1) Plaintiff observed Principal Chance-Peart yell at Mr. Singh and Ms. Previl at P.S. 327; 2) seven of the named teachers received disciplinary letters or negative performance reviews during their employment at P.S. 327, which either are in the record or Plaintiff testified that the teachers showed her the documents (Ms. Previl, Ms. Laing, Ms. Pryor, Ms. Abdurraham, Ms. Jones, Ms. Robson-Ross and Ms. Cohn); 3) four of the teachers had § 3020-a proceedings commenced against them during their time at P.S. 327 (Ms. Pryor, Ms. Jones, Ms. Robson-Ross and Ms. Cohn); 4) two of the teachers believe they were targeted and subjected to discipline for false or inaccurate reasons at P.S. 327 (Ms. Robson-Ross and Ms. Cohn); and 5) nine of the ten teachers concluded their employment, either by retiring or being terminated, transferred or discontinued from P.S. 327 (Mr. Singh, Ms. Previl, Ms. Laing, Ms. Pryor, Ms. Abdurraham, Ms. Jones, Ms. Robson-Ross, Ms. Bess and Ms. Perullo).

Even giving Plaintiff the benefit of every inference, Plaintiff's evidence could not establish that Defendant engaged in a pattern of age discrimination against older teachers at P.S. 327 so as to render the proffered reasons for Plaintiff's discipline and termination proceedings pretextual. First, Plaintiff has failed to offer evidence that she is similarly situated to any of these alleged comparators of the same protected age group so as to demonstrate any meaningful pattern. See Harewood, 2021 WL 673476, at *12. She does not describe her or their experience, education, training, tenure or disciplinary history. Second, Plaintiff does not provide context to these disciplinary outcomes that would enable a fact finder to conclude that the discipline,

---

[31] Although it appears Ms. Cohn may not yet have been 40 years old at the time Ms. Chance-Peart became the Principal at P.S. 327 in 2014, for the sake of argument, the Court includes Ms. Cohn in the numbers below concerning Plaintiff's numerical evidence regarding teachers over the age of 40 years old at P.S. 327.

yelling, initiation of § 3020-a proceedings or conclusion of employment at P.S. 327 were the result of age discrimination.  See Self, 844 F. Supp. 2d at 437; Melman, 98 A.D.3d at 123. Third, at most, the evidence establishes that nine teachers in Plaintiff's age group of at least 40 years of age[32] left employment at P.S. 327, seven teachers received disciplinary letters or negative performance reviews, and four had § 3020-a proceedings commenced against them. These numbers, in and of themselves, are objectively too small of a sample size from which a fact finder could draw meaningful conclusions.  See Self, 844 F. Supp. 2d at 437.  Plaintiff fails to offer information regarding the total number of teachers above the age of 40 at P.S. 327 during the relevant period as compared to the total number of younger teachers, or how the percentage of disciplinary actions or other forms of alleged discrimination fell amongst teachers over the age of 40 versus younger teachers.  There is thus no "evidentiary record from which a trier of fact could infer that such discrimination had actually been perpetrated."  See Melman, 98 A.D.3d at 123.  Further weighing against Plaintiff's theory, Plaintiff does not dispute that the hiring committee at P.S. 327, of which Principal Chance-Peart was a part, hired more teachers over the age of 40 than it hired under the age of 40 during the 2015-2016 school year, and that the committee hired the same number of teachers over the age of 40 as it hired teachers under the age of 40 during the 2017-2018 school year.  See Chance-Peart Decl. ¶ 14; Pl.'s Rule 56.1 Counter Stmt. ¶¶ 94-95.

Plaintiff has failed to offer evidence sufficient to raise a disputed issue of material fact as to whether Defendant's proffered reasons for the actions taken against Plaintiff were based on pretext based on her allegations of a pattern of age discrimination at P.S. 327.

---

[32] The Court uses 40 years or older as the youngest approximate age of Plaintiff's age cohort given Ms. Cohn's age and inclusion as a "senior" teacher.

**2.    Performance Issues Substantiated By Plaintiff's § 3020-a Proceeding**

As to Plaintiff's claim that the February 22, 2016, March 2, 2016, March 7, 2016 observations deeming Plaintiff ineffective; her overall ineffective rating for the 2015-2016 school year (including the three observations Peer Validator Mr. Connors performed finding Plaintiff "less than effective" as part of that overall rating); and the letters issued to Plaintiff's file on November 20, 2015, December 16, 2015, January 22, 2016, January 26, 2016, and May 12, 2016 were "false and fabricated," these ratings, observations and events were substantiated in her § 3020-a proceeding.[33]  See supra Section II.b.  These factual findings thus have preclusive effect.  See Geer, 2021 WL 6015716, at *14; Severin, 2021 WL 1226995, at *7; Thomas, 336 F. Supp. 3d at 325-26.  Plaintiff cannot now dispute the facts of those same incidences nor litigate the issue of whether Defendant had a legitimate reason for disciplining her.

Nonetheless, because the Court finds that Plaintiff did not explicitly raise age discrimination as a defense in her § 3020-a proceeding,[34] Plaintiff is not precluded from arguing that these disciplinary actions, although meritorious, were motivated in part by age animus.  See

---

[33] Other evaluations or disciplinary letters were found to be substantiated in Plaintiff's § 3020-a proceeding that Plaintiff argues were "false and fabricated," but, the Court only addresses the ones post-November 15, 2015 as relevant to her surviving age-discrimination claim.

[34] Plaintiff argued in her § 3020-a proceeding that Principal Chance-Peart, Assistant Principal Gold and Assistant Principal Mohamad "engaged in a 'witch hunt' against her" and a "conspiracy to discharge her" based on animus or bias.  See Ex. EE at DOE000874-75.  The hearing officer in Plaintiff's § 3020-a proceeding found "no evidence suggesting that [Principal] Chance-Peart or any of the other administrators held any animus or bias against her.  Quite the contrary, the record is replete with instances in which the School's administrators acted diligently to address the identified deficiencies in [Plaintiff's] pedagogy."  See id. at DOE000884.  The hearing officer further found that Plaintiff's claim of a "'witch hunt' is lacking in evidentiary support and, as such, cannot serve to rebut the presumption of [Plaintiff's] incompetence."  See id. at DOE000887.  It appears the hearing officer decided only whether Principal Chance-Peart, Assistant Principal Gold and Assistant Principal Mohamad held any personal bias or animus towards Plaintiff; not once in the hearing officer's decision is there any mention of discrimination based on age.

Washington, 2017 WL 4687982, at *7; Williams, 2013 WL 5226564, at *9.  Plaintiff has failed

to provide evidence from which a fact finder could conclude that Defendant was motivated in

part by age animus when issuing these "ineffective" reviews or disciplinary letters.  As discussed

supra, Section III.b.i, Plaintiff has not provided any information on similarly situated younger

comparators to support her claim that Defendant disproportionately disciplined older teachers for

the same behavior; or sufficient evidence regarding similarly situated older teachers, as discussed

supra, Section III.b.iii.1, such that a fact finder could find that Plaintiff's negative reviews and

disciplinary letters were part of Defendant's alleged scheme to get rid of older teachers.

Plaintiff's only remaining theory to show pretext—that her evaluations and disciplinary letters

were false and fabricated—was already rejected in Plaintiff's § 3020-a proceeding when each of

these evaluations and disciplinary charges were substantiated by the hearing officer.  Other than

Plaintiff's testimony about the events on January 26, 2016—in which Plaintiff admits she made a

religious threat to Assistant Principal Gold, but disputes the exact wording—the record here does

not include evidence from Plaintiff to explain the circumstances underlying these evaluations or

letters.  See supra Section I.b.iv.  As to the letters dated December 16, 2015 and May 12, 2016,

Plaintiff admits she did not submit her Friday Folders three times.  See Ex. 1 at 120:12-19.

Plaintiff has failed to provide evidence upon which a jury could consider genuine issues of

material fact in dispute.  Plaintiff has therefore failed to offer evidence that would be sufficient to

establish that Defendant's proffered legitimate and non-discriminatory reasons were pretextual.

### 3.    Performance Issues Not Substantiated By Plaintiff's § 3020-a Proceeding

The performance issues that were either found not to be substantiated by the DOE or

were not considered in Plaintiff's § 3020-a proceeding, and occurred after November 15, 2015

such that they could form the basis of Plaintiff's NYCHRL age-discrimination claim, are the

68

following: 1) a letter issued to Plaintiff's file on January 26, 2016 stating Plaintiff neglected her duties and exhibited professional misconduct on January 22, 2016, see Ex. Q; 2) a letter issued to Plaintiff's file on February 10, 2016 for failing to file an incident report for an incident on January 12, 2016, see Ex. S; 3) a letter issued to Plaintiff's file on February 11, 2016 as a result of a parent's observation of Plaintiff's classroom, see Ex. T; 4) a letter issued to Plaintiff's file on March 16, 2016 concerning a failure to supervise her students on February 10, 2016, see Ex. V; 5) a letter issued to Plaintiff's file on March 30, 2016 stating Plaintiff failed to supervise her students, neglected her duties and failed to complete an incident report for an incident on March 16, 2016, see Ex. W; 6) a letter issued to Plaintiff's file on May 5, 2016 stating Plaintiff failed to enter data into Dropbox, see Ex. X; 7) a letter issued to Plaintiff's file on May 18, 2016 stating Plaintiff failed to follow her duties when she was found to be non-compliant with the school-wide mandated literacy block, see Ex. Z; and 8) a letter issued to Plaintiff's file on May 18, 2016 stating Plaintiff failed to follow her duties when she ignored Principal Chance-Peart's directives on April 11, 2016, see Ex. AA.[35]

Specifications 14 and 15 in Plaintiff's § 3020-a proceeding concerned the events described in the March 16, 2016, and March 30, 2016, disciplinary letters to Plaintiff's file. See Exs. V, W. Specification 14 charged Plaintiff with neglecting her duties, failing to follow school policy and procedure and/or using poor judgment, in that she failed to supervise and monitor students' behavior allowing a student's coat to be damaged on February 10, 2016. See Ex. EE at DOE000834. Specification 15 charged Plaintiff with neglecting her duties, failing to follow

---

[35] Plaintiff's § 3020-a proceeding also did not address the events captured in a letter issued to Plaintiff's file on February 29, 2016, stating Plaintiff failed to submit her Friday Folder, see Ex. U, but Plaintiff has admitted she did not submit her required Friday Folders three times. See Ex. 1 at 120:12-19.

school policy and procedure and/or using poor judgment, in that she failed to supervise a student and/or failed to complete an incident report in which a student was pushed on the chair and/or sustained a bruise on her leg and/or pushed down the stairs, and/or pushed into the wall, and/or punched in the stomach and/or thighs and/or the student's personal belongings thrown in the garbage on March 16, 2016. See id. In her § 3020-a proceeding, Plaintiff denied these charges and argued that "any statements from student witnesses regarding either alleged incident must be disregarded given the administration's established efforts to coerce students to make false reports against her." See id. at DOE000880. Plaintiff also argued that "by engaging in such behavior, the administration created a 'culture of lies.'" See id.

The hearing officer found Specifications 14 and 15 were not substantiated by the DOE because the DOE relied on hearsay evidence. See id. at DOE000899-901. The hearing officer, however, did not agree with Plaintiff's position that these performance issues were false and fabricated. In fact, the hearing officer found that Plaintiff's "claim that the administration coached students to make false reports against her . . . stands entirely unsubstantiated [and Plaintiff's] claims in this regard must be rejected as unfounded." See id. at DOE000886-87. Thus, Plaintiff is precluded from arguing in this Court that the performance issues described in disciplinary letters issued to her file on March 16, 2016, and March 30, 2016, were false and fabricated, as the hearing officer in Plaintiff's § 3020-a hearing considered and rejected this argument. See id.; Bailey v. Mount Vernon City Sch. Dist., No. 17 Civ. 9973 (KMK), 2020 WL 1528481, at *11 (S.D.N.Y. Mar. 30, 2020) (finding collateral estoppel bars the Court from reconsidering the plaintiff's argument that the hearing officer explicitly rejected in the written decision). Even if the finding was not preclusive, Plaintiff did not deny in her deposition that the events described in the March 16, 2016 letter took place, but claimed that Assistant Principal

70

Mohamad met with Plaintiff about the incident without waiting for her union representative.  See Ex. 1 at 93:10-25, 134:22-135:10.  As to the events described in the March 30, 2016 letter, Plaintiff's testimony at her deposition seems to take issue with the fact that Plaintiff recalls the March 30, 2016 meeting to be about an incident with a student who claimed to be bullied in the school yard, and not a student who was injured in Plaintiff's classroom and had her belongings thrown in the trash.  See Ex. 1 at 119:6-13.  Even if the content of these two letters were "false or fabricated," discrimination does not lurk behind every inaccurate statement, and a Plaintiff must point to evidence from which a reasonable juror could conclude that age was a motivating factor behind documenting her performance issues, which Plaintiff has not.  As such, Plaintiff has failed to raise a dispute of material fact as to whether Defendant's proffered reasons for these two performance issues is pretextual.

As to the remaining six disciplinary letters issued to Plaintiff's file that were not addressed in Plaintiff's § 3020-a proceeding, Plaintiff has also failed to raise an issue of material fact as to whether Defendant's proffered reasons for issuing the letters were pretextual.  See supra Section II.b.  As to the letter dated January 26, 2016, Plaintiff claims to dispute these documented failures to submit her grades and even referenced she had proof of a computer "snap shot" showing that she did submit her grades, but Plaintiff does not provide that evidence to the Court here.  See Ex. Q; see also Ex. 1 at 113:1-4 ("… I would take a screen shot of the grades and I would actually give it to Ms. Chance-Peart and Ms. Gold and I would still be written up for not giving them my grades."); id. at 114:18-23 (Plaintiff stating that she still has copies of the screen shots of her grades).  As to the letter dated May 5, 2016, Plaintiff conceded in writing on the letter itself that she did not enter all of the Dropbox data she was required to, and at any rate, does not provide evidence or the screenshot of the data she claims to have entered.  See Ex. X.

71

As to the letters dated February 10, 2016, and February 11, 2016, Plaintiff wrote on her letters that she has a response or further documentation to provide regarding the incidents described in the letters, and/or that the content of the letters is inaccurate.  See Exs. S, T.  Plaintiff has not produced such rebuttal letters or other evidence supporting Plaintiff's denials of these incidents. The only statement of content from Plaintiff appears on the February 11, 2016 letter ("[Student] was removed from the class because his mom says that she does not want [Student] to be [in] the class with the same students he was fighting with last year."), but it is inadmissible hearsay.  See Ex. T.  As to the letters dated May 18, 2016, Plaintiff did not even dispute at the time of signing the letters she failed to comply with the school-wide mandated literacy block, that she failed to manage her students in the hallway, and that when Principal Chance-Peart requested that Plaintiff line up her students, Plaintiff "ignored [Principal Chance-Peart's] directive and walked away."  See Exs. Z, AA.  Plaintiff only wrote that she disagreed with the letters' characterization of an April 12, 2016 meeting with Plaintiff and her union representative to discuss the events described in the letters.  See Exs. Z, AA.  Without pointing to any evidence—whether direct or circumstantial, and after a full opportunity to conduct discovery—to support Plaintiff's claim that Defendant's proffered reasons for these disciplinary incidents are pretextual, Plaintiff fails to create a dispute of material fact so as to withstand a motion for summary judgment.  See Fincher, 2008 WL 4308126, at *3; Pfunk, 73 F. Supp. 3d at 187.

Even if the content of all eight of these letters were indeed "false or fabricated," Plaintiff must point to evidence, beyond her own conclusory statements, from which a reasonable juror could conclude that age was a motivating factor behind allegedly falsely documenting her performance issues, but she has not.  See Rockman, 2021 WL 3621685, at *7-8 & n.13; Twomey, 2015 WL 5698002, at *10; Rodriguez, 2011 WL 3610751, at *12.  The letters were

written by different administrators on different topics, undermining the idea of a concerted plan to dismiss Plaintiff.  As to the initiation of Plaintiff's § 3020-a proceeding, none of these eight performance issues was necessary to trigger the proceeding or Plaintiff's resulting termination. See Ex. EE at DOE000901-02 (finding termination warranted based only on Specifications 1-4, and finding any further penalties based on the other substantiated charges would be superfluous as to the termination).  Although a plaintiff may be able to demonstrate pretext by arguing that an otherwise meritorious initiation of § 3020-a proceedings was informed, in part, by age animus, as discussed, supra, Sections III.b.iii.1, Plaintiff has failed to provide any explicitly ageist comments or similar evidence, or comparator or statistical information regarding the treatment of other teachers.  The record therefore lacks evidence upon which a fact finder could conclude that Defendant's initiation of Plaintiff's § 3020-a proceeding could have had a discriminatory motive. Plaintiff has also failed to raise a dispute of material fact as to pretext with respect to the initiation of her § 3020-a proceeding.

The record suggests that at the time Plaintiff worked at P.S. 327, the school was working to improve student outcomes and fix its own operational and systemic issues.  See Chance-Peart Decl. ¶ 6.  Although Plaintiff may believe that she was doing a satisfactory job given the circumstances and disagreed with being written up for various violations of DOE policy, a "plaintiff's subjective disagreement with [her performance] reviews is not a viable basis for a discrimination claim."  See Sotomayor, 862 F. Supp. 2d at 259 (quoting Valentine, 50 F. Supp. 2d at 284); Melman, 98 A.D.3d at 121 ("The mere fact that [Plaintiff] may disagree with [her] employer's actions or think that [her] behavior was justified does not raise an inference of pretext." (internal quotation marks & citations omitted)).

Accordingly, this Court respectfully recommends that summary judgment be granted in

favor of Defendant on Plaintiff's NYCHRL age-discrimination claim.

### c.  NYCHRL Hostile-Work-Environment Claim

Because Plaintiff has not presented evidence showing that she has been treated less well because of her age, whether through direct or statistical evidence or disparate treatment, see supra Section III.b, her hostile-work-environment claim brought under the NYCHRL fails.  See Urquhart v. Metro. Transp. Auth., 975 F. Supp. 2d 320, 339 (S.D.N.Y. 2013) ("The broader remediation available under the City law does not allow the [p]laintiff to dispense with linking his claim of hostility to some attitude that the law forbids." (citation omitted)); Russo v. New York Presbyterian Hosp., 972 F. Supp. 2d 429, 452-54 (E.D.N.Y. 2013) (granting summary judgment on a NYCHRL hostile-work-environment claim and collecting cases requiring plaintiffs to demonstrate that an alleged hostile work environment existed due to a person's membership in a protected class); Sotomayor, 862 F. Supp. 2d at 260 (granting summary judgment on plaintiff's NYCHRL claims because "[n]o reasonable jury could find that [the plaintiff] was subjected to more frequent [negative treatment] because of her race, national origin, or age").  This Court respectfully recommends that summary judgment be granted in favor of Defendant on Plaintiff's NYCHRL hostile-work-environment claim.

### d.  ADEA And NYSHRL Hostile-Work-Environment Claims

For the same reasons discussed above, because Plaintiff has not presented evidence showing that she has been treated less well because of her age, even under the less-exacting standard of the NYCHRL, see supra Section III.b, her hostile-work-environment claims brought under the ADEA and NYSHRL likewise fail.  This Court respectfully recommends that summary judgment be granted in favor of Defendant on Plaintiff's ADEA and NYSHRL hostile-work-environment claims.

IV.     **CONCLUSION**

For the foregoing reasons, this Court respectfully recommends that the Court grant

Defendant's motion for summary judgment, enter judgment in Defendant's favor and close this

case.

V.      **OBJECTIONS**

This Report and Recommendation will posted on the docket.  Any written objections to

this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14)

days of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any

requests for an extension of time for filing objections must be directed to the District Judge

assigned to this action prior to the expiration of the fourteen (14)-day period for filing objections.

Failure to file objections within fourteen (14) days will preclude further review of this Report

and Recommendation either by the District Court or the Court of Appeals.  See Thomas v. Arn,

474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive

right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to

object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review

of the magistrate[] [judge's] decision." (internal quotation marks & citation omitted)).


Dated:  Brooklyn, New York
        August 2, 2022


                                        *Vera M. Scanlon*
                        _____
                                VERA M. SCANLON
                            United States Magistrate Judge